**MASSACHUSETTS COMPANY INC., Trustee of the Della B. Woodbury Trust, Petitioner–Appellee,**

v.

**Carl EVANS, Personal Representative of the Estate of Della B. Woodbury, Respondent–Appellant.**

**No. 94CA2042.**

Colorado Court of Appeals, Div. V.

Feb. 22, 1996.

Rehearing Denied March 21, 1996.

Certiorari Denied Oct. 15, 1996.

Brauchli—Snyder, P.C., Paul Snyder, Jr., Boulder, for Petitioner–Appellee.

Hopp and Associates, P.C., Brandon S. Culter, Longmont, for Respondent–Appellant.

Opinion by Judge ROTHENBERG.

Carl Evans, executor of the estate of Della B. Woodbury, appeals the order of the district court directing that he distribute the remaining assets of the Della B. Woodbury Trust (the trust) to Woodbury's heirs. The sole issue is whether a provision in the trust instrument that "the principal shall be distributed to the executors or administrators of the Donor" entitles Evans to receive the trust assets personally, or only as a fiduciary of the estate. Because we conclude the distribution is to be made to Evans as a fiduciary, we affirm.

Woodbury died in 1979 leaving no spouse or children, but several siblings with large families. Evans was a longtime friend of Woodbury's. Woodbury's 1975 will had three simple articles: the first directed payment of her debts and taxes; the second provided for a pourover of the residue into the Della B. Woodbury Trust; and the third named the Trust Company of America, a Colorado corporation, as her executor. The second article specifically stated that Woodbury did not want the administration of her

estate to continue after the assets had been distributed to the trustee.

The trust document designated Massachusetts Company, Inc., a Massachusetts corporation, as her trustee and provided for five specific distributions totalling $3000: three to churches, one to a niece, and the other to a grandnephew. Following payment of these amounts, the trustee was to pay one of Woodbury's sisters a few hundred dollars per month until she died. Following her sister's death, the trustee was to pay income for two years to a convent in Boulder.

As to the disposition of the remaining assets, the trust document stated that: "[T]he principal shall be distributed to the executors or administrators of the Donor on written demand." The present controversy concerns Woodbury's intention with respect to this provision.

The latest version of the trust document was written in 1978. The record does not indicate who drafted it, but it was signed by Woodbury, her attorney, and a Massachusetts Company representative. Also, in 1978, at the same time Woodbury signed the latest version of the trust document, she added a codicil to her will, designating Evans as executor and her attorney, Henry Swartz, as alternate executor.

After Woodbury's death in 1979, Evans handled the probate of the estate with Swartz' help, paid the debts and taxes, and liquidated the assets; which then approximated $160,000. Evans delivered the assets to the Massachusetts Company as trustee, which made the five distributions and began sending monthly checks to Woodbury's sister as directed by the terms of the trust.

However, in 1983, before the district court had closed the probate estate, Swartz petitioned to have the estate held open, noting there was a "confusion" in the 1978 trust document. The confusion referred to was the direction that the trust principal (Woodbury's residual estate) be paid to the executor of her estate, with no instructions as to what the executor was to do with it. Swartz asserted that the estate would have to remain open in Colorado so the remaining trust assets could be paid over to the executor for distribution in accordance with intestacy laws. The district court agreed to hold the estate open.

Woodbury's sister died in 1991, and the Massachusetts Company as trustee paid the trust's income to the Boulder convent for two years as directed. When the two-year period ended, Evans wrote to the Massachusetts Company demanding payment of the remaining trust principal. The Massachusetts Company refused and filed a pleading with the court admitting that the trust document contained a "circular disposition" directing the principal back to the executor. However, it contended that the remaining trust assets should not go to Evans individually, but instead to Woodbury's heirs by intestacy.

At a hearing in November 1994, Evans, through counsel, urged the court to honor the plain language of the trust and deliver the trust assets, then approximating $225,000, to him personally. He argued that: (1) Woodbury had intentionally excluded her many relatives from her estate, except for the few specifically mentioned; (2) the trust document did not direct the executor to distribute the principal to Woodbury's heirs; (3) the trust document did not even mention "heirs"; (4) the only relatives singled out for gifts were the niece, grandnephew, and sister; (5) the trust document used the words "shall be distributed" for each of the small distributions, just as it did for the final distribution to the executor; (6) the will specifically directed that the probate estate not remain open after the assets had been distributed to the trustee; and (7) most importantly, by naming Evans executor on the same day she signed the trust document, Woodbury intended that he receive the remaining trust assets personally.

The Massachusetts Company conceded that the trust document was poorly drafted but urged the court to find that the remaining trust assets should be paid to Evans in his official capacity as executor of Woodbury's estate. It contended that: (1) if Woodbury had intended to make a bequest to Evans personally, she would have done so by name; and (2) leaving a provision for payment of the trust remainder to Woodbury's "executors or administrators" would not

guarantee that Evans would receive it personally because, if Evans had died or had refused the appointment, it could have gone to the alternate executor, or to a complete stranger appointed by the court.

Acknowledging the failings in the trust document, the trial court nevertheless determined that the documents were not ambiguous and did not consider extrinsic evidence of Woodbury's intent. After examining the language of the trust provision, the court concluded such language was too unlikely a method for Woodbury to have used had she intended that the trust assets be paid to Evans personally. Concluding that Woodbury intended that the distribution be made to her executor in his official capacity, the trial court ordered the money paid to Evans as executor for distribution to Woodbury's heirs.

Evans now contends the trial court erred in ordering that the money be distributed to him solely as executor. We disagree.

■ Initially, we note that the only evidence considered in this case consists of the will and trust documents. In such a case, we are not bound by the trial court's interpretation and may review the issue *de novo. Meier v. Denver United States National Bank,* 164 Colo. 25, 431 P.2d 1019 (1967).

■ The cardinal rule in the interpretation of wills or other testamentary documents is that the intent of the testator should be ascertained from the instrument itself and given effect. *See* § 15–11–601, C.R.S. (1995 Cum.Supp.); *Meier v. Denver United States National Bank, supra.*

Unfortunately, here, discerning Woodbury's intent is difficult because, at the hearing, the parties offered two plausible interpretations of the same language in the documents. The heirs claimed entitlement to the residual estate and asked why, if Woodbury wanted Evans to receive her residual estate, she would have chosen such a roundabout and potentially futile way of leaving it to him. In response, Evans asked why, if Woodbury wanted her residual estate to go to her heirs as they contend, she would not have clearly stated that, instead

of leaving it to her "executors or administrators" without further instructions.

Given this difficulty, we look to rules of construction to aid our decision.

■ At common law, executors were entitled to the undisposed-of residue unless it appeared to have been the testator's intention to exclude them from the beneficial interest. However, the modern rule is that the appointment of an executor does not give the executor the undisposed-of surplus. 4 W. Bowe & D. Parker, *Page on Wills* §§ 34.33 & 34.34 (4th ed.1961).

■ Further, a testamentary gift to an executor, designated as such, vests in him or her as a fiduciary and not personally, unless the intention of the testator is plainly otherwise. *See Slavik v. Estate of Slavik,* 46 Ark.App. 74, 880 S.W.2d 524 (1994). As one commentator has explained:

> It often happens that a will appoints an executor and makes an express gift to him, sometimes describing him merely as executor, sometimes naming him and also describing him as executor. What is the effect of such a gift? On the one hand, it is possible for testator to make a gift to an executor or administrator for his own personal benefit. On the other hand, at modern law, *the courts will not treat such gift as intended for [the executor's] personal benefit unless it appears clearly from the will, when taken as a whole and when read in the light of the surrounding circumstances, that testator intended the executor to take for his own benefit.*

4 W. Bowe & D. Parker, *Page on Wills, supra,* at 472 (emphasis added). *See also* 95 C.J.S. *Wills* § 683 (1957) (If, on a fair construction of the entire will, the intention of the testator is clearly manifested that the executor shall take personally, the executor may do so, and such is particularly true if the executor is a close blood relative of the testator.)

Some jurisdictions have held there is a presumption that the executor takes as a fiduciary and not individually. *Thomas v. Anderson,* 245 F. 642 (8th Cir.1917). Others have simply imposed a requirement that a testator's intention to make a beneficial gift

to the executor must be manifested clearly in the will or other testamentary documents. 4 W. Bowe & D. Parker, 4 *Page on Wills, supra* at 472. *See generally* Annot., 3 A.L.R.3d 1376 (1965).

■ We adopt the latter rule and hold that a testator's intention to make a beneficial gift to the executor personally must be manifested clearly in the will or other testamentary documents. Absent such intent, a provision for payment to the executor named as such is in his or her fiduciary capacity and not personally.

Applying that principle in the present case, we note that if Woodbury had not added the codicil naming Evans as executor of her estate, her previously named corporate executor would have received the trust assets as fiduciary for Woodbury's heirs. The record certainly discloses no evidence that Woodbury intended for the Trust Company of America to receive her trust assets for the corporation's private use. A corporation would hardly be a natural object of Woodbury's bounty.

The question is therefore whether the mere addition of the codicil naming Evans as the executor constitutes a clear manifestation of Woodbury's intent to make Evans a beneficiary of her trust. We agree with the trial court that it does not.

The 1978 codicil only changed the executor of Woodbury's estate. It did not change the residuary clause in the trust, or provide any reason to believe that Evans was anything more or less than Woodbury's new executor. The codicil cannot be said to constitute a clear manifestation of a new intent to make Evans a beneficiary of the trusts. It follows that we should ascribe the same intent to the final versions of the will and trust as we would have ascribed to the 1975 versions, *i.e.,* that the executor would not take the residual estate personally, but only as a fiduciary for the benefit of Woodbury's heirs.

Therefore, the trial court correctly concluded that the remaining trust assets were to be distributed to the executor solely in his fiduciary capacity for ultimate distribution to Woodbury's heirs.

Order affirmed.

STERNBERG, C.J., and CASEBOLT, J., concur.