**In re the ESTATE OF Hazel I. McCREATH, Deceased.**

**Charlotte M. Ritchey, Appellant,**

**v.**

**Milford L. McCreath and Elton R. McCreath, Appellees.**

**No. 09CA0222.**

Colorado Court of Appeals, Div. III.

Dec. 24, 2009.

Rehearing Denied Jan. 28, 2010.

Wade Ash Woods Hill & Farley, P.C., Spencer J. Crona, Gregory B. Washington, Denver, Colorado, for Appellant.

Donelson Ciancio & Goodwin, P.C., Daniel T. Goodwin, Blaine D. Bowne, Broomfield, Colorado, for Appellees.

Opinion by Judge ROY.

Charlotte M. Ritchey (daughter) appeals the trial court's order granting a motion for determination of questions of law and ruling that a last will and testament (will) executed by Hazel I. McCreath (mother) did not presently revoke the Hazel I. McCreath Revocable Trust dated July 11, 1992 (the trust); and that a quitclaim deed issued by mother alone as trustee of the trust on March 13, 2001, conveying the family farm and unrelated mineral interests was ineffective to transfer

the real property out of the trust. Daughter also contends that the trial court erred in entering the order in a manner procedurally contrary to the trial court's modified case management order and without hearing evidence as to whether mother intended to revoke the trust by issuing the quitclaim deed. We affirm.

## I. The Documents

Three documents are germane to the issues on appeal.

The first is a trust agreement dated July 11, 1992, which was executed by mother as settlor, and which designated both mother and daughter as trustees. The trust corpus consists of the family farm, including appurtenant mineral interests, and the trust agreement provides that upon termination the trust estate is to be divided equally among mother's three children. The July 11, 1992 trust agreement amends a November 8, 1989 trust agreement for the apparent purpose of naming daughter as co-trustee replacing mother's husband, who was deceased.

As pertinent here, the trust provides:

[Mother] reserves the right at any time or times to ... revoke ... this Trust, in whole or in part, or any provision thereof, by an instrument in writing signed by [mother] and delivered to Trustees.... If this Trust is revoked in its entirety, the revocation shall take effect upon the delivery of the required writing to Trustees. On the revocation of this Trust in its entirety, Trustees shall pay or transfer to [mother] as [mother] shall direct in the instrument of revocation, all of the trust estate.

. . . .

A majority of all fiduciaries in office at the time must concur in decisions except where Settlor had expressly placed discretion in one of them.

The second document is a recorded quitclaim deed dated March 13, 2001, executed by mother alone as a trustee of the trust, and conveying the family farm and unrelated mineral interests to daughter, individually free and clear of the trust.

The third is a handwritten document (mother's will), which was executed May 25, 2005, and, which, for the purposes of this appeal, is presumed to be mother's last will and testament. Mother's will was handwritten by an attorney, was executed by mother, and was witnessed by the attorney and a nurse. It has mother's name at the top and has no characterization of the instrument, and the text consists of four bullet paragraphs, which state as follows:

- revoke all prior wills and trusts
- give personal property (contents of house) to children in equal shares. children choose what they want to take. all others sold and placed in the residuary.
- residuary distributed. after expenses. debts + taxes, to:
—Charlotte Mae Ritchy—80%
—Elton Ray McCreath—10%
—Milford Lee McCreath—10%
- ~~trustee~~ [sic] Personal Representative (executor) shall be non-family member. if none can be found to appoint then Charlotte Mae Ritchy

There is no dispute that mother's will was delivered to daughter, and there are allegations that a more formal document was prepared but never executed by mother. Mother passed away over a year after signing the will.

Milford and Elton McCreath (collectively, sons) commenced an action seeking declaratory judgment as to the validity and legal effect of certain documents, including those above-described, and alleging claims against daughter for breach of fiduciary duty, conversion, civil theft, an accounting, and constructive trust. Later, daughter filed for formal probate of mother's will. The sons subsequently entered the probate case as interested parties.

After consolidating the "estate plan" issues for trial, the trial court issued a modified case management order (MCMO) providing for a jury trial on the validity of mother's will, and a bench trial on the question whether the will revoked the trust at the time it was executed and delivered to daughter. The remaining claims were stayed for future determination.

Following this MCMO, sons filed a motion for determination of two questions of law under C.R.C.P. 56(h): (1) whether the signature of mother as trustee of the trust on the quitclaim deed alone was effective to transfer the trust assets to daughter individually free and clear of the trust; and (2) whether the trust could be revoked by mother's will at the time it was executed and delivered to daughter.

The court concluded, in an extended, detailed, and well-reasoned order (the order), that the signature of mother alone, as trustee, on the quitclaim deed was ineffective to transfer the trust assets to daughter free of the trust. It also concluded that mother's will did not revoke the trust at the time of its execution and delivery to daughter as co-trustee of the trust. Subsequently, it issued a C.R.C.P. 54(b) order certifying its C.R.C.P. 56(h) order as final, finding "that there is no just reason for delay," and "direct[ing] entry of judgment in accordance with its order."

## II. Jurisdiction

■ An appeal to this court generally may only be taken from a final judgment of the trial court. C.A.R. 1(a). A final judgment is one that ends the particular action and leaves nothing more for the trial court to do to completely determine the rights of parties. *See, e.g., E.O. v. People in Interest of C.O.A.,* 854 P.2d 797 (Colo.1993). C.R.C.P. 54(b) provides an exception whereby a trial court may direct the entry of final judgment as to fewer than all of a party's claims, but only if (1) the decision certified resolves an entire claim for relief; (2) the decision certified is final in the sense of an ultimate disposition of an individual claim; and (3) there is no just reason for delay. *Lytle v. Kite,* 728 P.2d 305, 308 (Colo.1986); *In re Estate of Scott,* 119 P.3d 511, 514 (Colo.App.2004), *aff'd,* 136 P.3d 892 (Colo.2006).

■ The motion that led to the order on appeal was denominated as a motion for determination of questions of law pursuant to C.R.C.P. 56(h). As both sons and daughter acknowledge, the purpose of a C.R.C.P. 56(h) motion is to "allow the court to address issues of law which are *not* dispositive of a claim (thus warranting summary judgment)."

*Board of County Comm'rs v. United States,* 891 P.2d 952, 963 n. 14 (Colo.1995) (emphasis added) (quoting 5 Robert Hardaway & Sheila Hyatt, *Colorado Civil Rules Annotated* § 56.9 (1985)). Thus, by definition, a true C.R.C.P. 56(h) order, without more, is not subject to C.R.C.P. 54(b) certification.

■ When the trial court certified the order, it was not explicit on which of sons' claims were resolved by the entry of judgment. However, sons' complaint requested a declaratory judgment as to the validity and legal effect of the quitclaim deed and mother's will. The order effectively disposed of those claims by concluding that (1) neither the quitclaim deed nor mother's will revoked the trust, and (2) the quitclaim deed was ineffective in transferring the trust assets to daughter free and clear of the trust. While there may be other matters to resolve on remand, those matters do not relate to the validity and legal effect of the quitclaim deed and mother's will, which govern the distribution of the estate and which are the pivotal documents in the litigation. Therefore, the order had a final, dispositive effect as to claims pending in the litigation; without more, the order constitutes a partial summary judgment under C.R.C.P. 56(a); and it was properly certified under C.R.C.P. 54(b).

Consequently, we conclude we have jurisdiction to review the order.

## III. Standard of Review

We review an order granting a motion for a determination of a question of law under Rule 56(h) de novo. *Hopp & Flesch, LLC v. Backstreet,* 123 P.3d 1176, 1180–81 (Colo. 2005); *Snook v. Joyce Homes, Inc.,* 215 P.3d 1210, 1217 (Colo.App.2009). We apply the same standards that governed the district court's determination of the motion. *See Smith v. Boyett,* 908 P.2d 508, 514 (Colo. 1995). The summary judgment standard of review has been applied to C.R.C.P. 56(h) matters. *See West Elk Ranch, L.L.C. v. United States,* 65 P.3d 479, 480–81 (Colo. 2002). Thus, in determining whether a genuine issue of material fact exists, we bear in mind that the nonmoving party is entitled to all inferences that reasonably may be drawn

from the undisputed facts, and we must resolve any doubt as to the existence of a genuine issue of material fact in the nonmoving party's favor. *See id.* at 481.

## IV. Mother's Will

■ Daughter first argues that mother's will was effective, at the time of its execution a delivery, as a matter of law, to revoke the trust. More specifically, she argues mother's will revokes the trust: (1) pursuant to the trust agreement's explicit terms; and (2) because there is clear and convincing evidence of mother's intent to revoke the trust in her will. This is an issue of first impression in Colorado. We disagree with the first argument and need not address the second.

At the outset, we recognize that the validity of mother's will is an unresolved issue pending before the trial court. However, for the purposes of our analysis, we assume that the will is valid and probatable.

■ The general rule is that a trust may not be revoked by the settlor without the consent of all beneficiaries, unless the settlor has explicitly reserved to himself or herself the power to do so unilaterally. *Barber v. Ritter*, 196 P.3d 238, 253 (Colo.2008). If a trust agreement provides a specific method for revocation, that method must be strictly adhered to in order revoke the trust. *Denver National Bank v. Von Brecht*, 137 Colo. 88, 95, 322 P.2d 667, 670–71 (1958); Restatement (First) of Trusts § 330(1) cmt. j (1935).

■ Here, the trust provides for revocation "by an instrument in writing signed by [mother] and delivered to Trustees." It makes no provision for revocation by will. If a trust agreement reserves the power to revoke by giving notice to the trustee in a specified form or manner, the settlor may exercise that power only during his or her lifetime, and the power cannot be exercised through a will. *See Brown v. Int'l Trust Co.*, 130 Colo. 543, 546–47, 278 P.2d 581, 583 (1954) (recognizing the general rule that a will does not revoke a trust); *see also* John P. Ludington, Annotation, *Exercise by Will of Trustor's Reserved Power to Revoke or Modify Inter Vivos Trust*, 81 A.L.R.3d 959, § 2(a) (1977) ("Attempts to modify or revoke by will, considered as wills, have all failed. The courts have held ineffective an attempted testamentary exercise of a reserved power to modify or revoke an inter vivos trust by deed or by written instrument delivered to the trustee.... A reserved power to modify or revoke during the settlor's lifetime cannot be exercised by his will." (footnote omitted)). This is a logical extension of the rule that a will does not become operable until the testator's death. *See In re Estate of Ralston*, 674 P.2d 1001, 1003 (Colo.App.1983).

■ A noted treatise, 1 *Page on the Law of Wills* § 1.2, at 3–4, states:

· The essential idea underlying the concept of the will is that though it is made by a person during his lifetime it does not become binding and has no legal force or operative effect until his death; nor does it pass any interest in property or create rights in others until the death of the maker, at which time its dispositive effect operates upon the circumstances concerning the extent and the nature of the testator's property and the objects of his bounty existing at his death rather than at the time the will was executed. The two inherent characteristics of a will embodied within this concept, which distinguish it from other instruments affecting property, are expressed by saying that a will is revocable and ambulatory. A third primary characteristic, one that actually precedes the two just mentioned and from which they naturally follow, is that the maker's frame of mind and intent respecting the instrument at the time it is executed must coincide with the nature and effect of a will as just described.

This element is usually referred to as the requirement of testamentary intent. The intent at the time of execution must be that the instrument take effect right at the time of death. If it is not to take effect until some date subsequent to the death of the maker it is not a will.

It follows that because of its ambulatory nature, a will does not have effect upon execution, or execution and delivery in this case. *See Taylor v. Wilder*, 63 Colo. 282, 286, 165 P. 766, 768 (1917).

Daughter argues that a will may have revocatory effect prior to its testamentary effect and for that proposition, relies on *Bailey v. Kennedy,* 162 Colo. 135, 425 P.2d 304 (1967). While there is some support for the proposition daughter posits, *Bailey* is of no assistance to her. In *Bailey,* the issue was the revocation of a prior will, which now, as then, is specifically authorized by statute. *See* § 15–11–507(1)(a), C.R.S.2009 ("A will or any part thereof is revoked: (a) By executing a subsequent will that revokes the previous will or part expressly or by inconsistency....").

Other authority is also of no assistance to daughter. A noted treatise states:

An instrument may be in part a will and in part an instrument of a different type. The same instrument may be both a conveyance and a will as to different properties disposed of therein. It is said that it cannot operate as a deed and as a will with reference to the same property.

An instrument which provided for the payment of the debts and funeral expenses was held to be testamentary as to such provisions while it was deed as to the provisions which conveyed to [the grantor's] daughter "a present interest and estate in and to all of estate of which I am now or shall be at the time of my death, seized." The fact that an instrument contains provisions of a testamentary character and also of a contractual character, does not prevent it from operating as a will so far as such testamentary provisions are concerned.

1 *Page on the Law of Wills* § 6.7, at 261–62 (rev. ed.2009) (citing, inter alia, *Taylor v. Wilder,* 63 Colo. 282, 165 P. 766 (1917); *Powers v. Scharling,* 64 Kan. 339, 67 P. 820 (1902)); *see also* Annotation, *May Instrument Inter Vivos Operate Also as a Will, or Part of Will,* 45 A.L.R. 843 (1926).

From our research, *Taylor* is the only Colorado authority dealing with a multi-faceted instrument, but it is of limited value. There, the instrument, which the court characterized as a will, was not executed in compliance with the statute and, therefore, was not a will. The instrument contained two provisions at issue in the case: (1) "For the sum of one dollar and other valuable consideration, I hereby transfer to Ozette Marshall my library, of which she is to take immediate possession," and (2) "At my death she is to have my sewing machine, table silver, dishes, table linen, and any and all other personal property I may have in my possession at the time of my death." 63 Colo. at 283, 165 P. at 767. Our supreme court concluded that an instrument could as to one part be a will, and as to another part, a contract. Based on that conclusion, the court held that the second sentence was testamentary in character and failed because the instrument was not executed in the matter required of a will. However, as to the first sentence, the court concluded it was sufficient to perfect an inter vivos transfer of a present interest to the transferee.

Our supreme court in *Taylor* relied to a significant extent on, and quoted extensively from, the Kansas decision of *Powers v. Scharling,* 64 Kan. 339, 67 P. 820 (1902). There, the instrument in question was prepared by the father, witnessed as a will, and acknowledged before a notary public as a deed. The instrument, after the payment of debts, expenses of last illness, and funeral expenses, made apparently minor bequests to each of his four sons, for example, $5 each to three of them and excused debt as to the other, and then made extensive provision for his two daughters. He gave, devised, and bequeathed one half of the residue and remainder to the first daughter, and one half to that daughter in trust for the other daughter and her children, with some specific powers and instructions. The instrument then provided:

Tenth. I desire and design to, and I do by this paper writing (both a will and deed), create, convey to, and vest in my beloved [first] daughter ... a present interest and estate in and to all the estate of which I am now or shall be then entitled, to the extent of one-half thereof, always, however, subject to the payment of the said debts, expenses, and legacies hereinbefore mentioned, and also to a life estate in me for and during the period of my natural life, and this present interest and estate I make upon a good and valuable and suffi-

cient consideration from said [first daughter], in addition to the consideration of natural love and affection I bear towards her.

*Powers*, 67 P. at 820. The father then conveyed the other half to the first daughter in trust for the other under the same terms and conditions as the bequest.

The Kansas court, in a portion of its opinion quoted in part by our supreme court in *Taylor*, states:

> In determining whether an instrument be a deed or will, the question is, did the maker intend to convey any estate or interest whatever to vest before his death and upon the execution of the paper? Or, on the other hand, did he intend that all the interest and estate should take effect only after his death? If the former, it is a deed; if the latter, a will. If, however, the testator intended that the grant should take effect upon the execution of the instrument as to certain of his property then in possession, and as to certain other of his estate not until his death, the instrument, having been properly executed, would be a contract, and irrevocable as to that part in possession, and to which it was intended to vest the title, and testamentary as to the residue. This is true although the conveyance is made subject to certain bequests, payment of debts after death, and a life estate reserved in the grantor. In such case the remainder in possession vests immediately upon the execution of the instrument, although possession and enjoyment are postponed. *Jordan v. Jordan's Adm'r*, 65 Ala. 301 [ (1880) ]; *Wall v. Wall*, 30 Miss. 91, 64 Am. Dec. 147 [ (1855) ].

*Powers v. Scharling*, 67 P. at 821; *accord Taylor v. Wilder*, 63 Colo. at 284–85, 165 P. at 768.

These cases have one important common denominator, that is, the testator or grantor used language in a will (or in *Taylor*, a document also making a bequest) specifically conveying, and in the instance of *Powers*, extended language conveying, a present interest.

Though no rule has been expressly enunciated, it would appear that if a testator intends to grant or convey a present interest in a will, where testamentary intent is presumed, the testator's intent must be clear and unequivocal from the language of the instrument. *See, e.g., In re Lowry's Estate*, 93 Ill.App.3d 1077, 1081, 49 Ill.Dec. 366, 418 N.E.2d 10, 13–14 (1981) ("More particularly I wish by this instrument, my last will and testament, to revoke, set aside and nullify specifically a certain trust created by me on January 24, 1972 and known as the Katherine Bulkley Lowry Declaration of Trust No. 44995 as amended by amendments no. one through four inclusive."); *First Nat'l Bank v. Oppenheimer,* 190 N.E.2d 70, 71 (Ohio County Prob. Ct.1963) ("This, Item 14 of my Last Will and Testament shall serve as notice to the Trustee under the Trust Agreement executed by me on May 9, 1957, as a Revocation of the Trust except as above set forth in this Item and shall be in compliance with Item Third of said Trust Agreement relating to notification of revocation of Trust."); *Sanderson v. Aubrey*, 472 S.W.2d 286, 287 (Tex.Civ.App.1971) ("This instrument is specifically included in the revocation clause above (where she had revoked all prior wills, etc.), And same is now formally revoked because the beneficiary of said instrument . . . has been a bitter disappointment to me.").

Daughter's reliance on section 15–11–507(2), C.R.S.2009, is also unavailing. That statute provides that "[i]f a subsequent will does not expressly revoke a previous will, the execution of the subsequent will wholly revokes the previous will by inconsistency if the testator intended the subsequent will to replace rather than supplement the previous will." The statute is designed to address conflicting wills when the second in time does not expressly revoke the first. It does not address the relationship between a will and an inter vivos trust agreement. Further, section 15–11–511, C.R.S.2009, addresses the termination of a trust prior to death and some aspects of the interplay between a will and an inter vivos trust, but makes no provision for the revocation of an inter vivos trust by will.[1]

---

1. Section 15–11–511(3), C.R.S.2009, provides:

A revocation or termination of the trust before

Daughter also refers us to Restatement (Third) of Trusts section 63, and argues that the revocation can be enforced by the clear and convincing evidence of mother's revocatory intent. For our purposes, we presume mother subjectively intended to revoke the trust at the time she executed the will. The Restatement provides an inter vivos trust may be revoked by a will as follows:

(1) The settlor of an inter vivos trust has power to revoke or modify the trust *to the extent the terms of the trust ... so provide.*

. . . .

(3) *Absent contrary provision in the terms of the trust,* the settlor's power to revoke or modify the trust can be exercised in any way that provides clear and convincing evidence of the settlor's intention to do so.

Restatement (Third) of Trusts § 63 (2003) (emphasis added). Comment i to section 63 further provides:

*Where method of revocation or amendment specified. . . .* Although the terms of the trust provide a method for the exercise of a power of revocation or amendment, if the terms do not make that method exclusive, this is not a "contrary provision" for purpose of Subsection (3). Thus, the settlor's power can be exercised either in the specific manner or by a method described in Comment h, above [which includes, by a will].

The trust agreement provides that the powers to revoke shall be exercised by delivering written, signed notice to the trustee. This is the explicit protocol for revocation. Consequently, because there is an exclusive method, comment i to section 63 is not applicable here.

The trust agreement's revocation clause makes clear that the settlor intended that the

power should be exercised only during her lifetime by an instrument delivered to both trustees. Apart from the plain meaning of the revocation provision, the stated disposition of the trust estate following revocation is to mother, not mother's estate or any third party, which reinforces the conclusion that the trust must be revoked, if at all, during mother's lifetime. Had mother wished to retain the right to exercise the reserved powers to revoke by her last will and testament, the trust agreement should have so stated. This she failed to do and her intention with respect to termination during her lifetime is unmistakably drawn from a consideration of the entire instrument.

Mother's will was ineffective in revoking the trust, as a matter of law, at the time of its execution and delivery to daughter.

## V. Quitclaim Deed

■■■ Daughter contends that mother, who was also the sole lifetime beneficiary of the trust, could convey the trust estate free of the trust to a co-trustee by quitclaim deed. We disagree.

Article III of the trust agreement states, in pertinent part:

During [mother's] lifetime the net income and principal shall be distributed at least annually to [mother] or disposed of as [mother] may direct Trustees from time to time by an instrument in writing signed by [mother] and delivered to Trustees in the lifetime of [mother].

Relying on this clause, daughter contends mother complied fully with the trust's terms for disposition of the farm in executing the quitclaim deed. We disagree.

■■■ Mother, as trustee, signed the quitclaim deed purporting to transfer the trust estate to daughter, the co-trustee, free of the trust.[2] The effect of a trust is to separate

the death of the testator causes the devise to lapse, but exhaustion of trust corpus between the time of execution of the testator's will and the testator's death shall not constitute a lapse; a revocation or termination of the trust before the death of the testator shall not cause the devise to lapse, if the testator provides that, in such event, the devise shall constitute a devise to the trustee of the trust identified in the testator's will, and

on the terms thereof, as they existed at the time of the execution of testator's will, or as they existed at the time of the revocation or termination of the trust, as the testator's will provides.

2. While the issue is not before us here, we note that mother "revoked" or "terminated" father's trust following his death by the use of a quitclaim deed. We express no opinion whether that quitclaim deed may suffer from the same infirmity.

legal ownership of property from the equitable or beneficial ownership. *Bowes v. Cannon,* 50 Colo. 262, 266, 116 P. 336, 338 (1911). Though a settlor of a trust may maintain the right to receive proceeds from the property of the trust, he or she cannot concurrently maintain legal ownership of the trust property. Therefore, mother did not own the trust estate. And a quitclaim deed is ineffective to transfer a title not vested in the transferor at the time of its execution. *See Tuttle v. Burrows,* 852 P.2d 1314, 1316 (Colo.App.1992).

■ The trust agreement authorized the trustees, acting jointly, to convey the property. "[W]here two or more persons hold title to property as trustees, any instrument purporting to convey that property must be executed by all of the trustees before a valid transfer of title will be accomplished." *Whatley v. Wood,* 148 Colo. 349, 358–59, 366 P.2d 570, 575 (1961); *see also Page v. Gillett,* 26 Colo.App. 204, 207, 141 P. 866, 867 (1914) ("It is clear that the conveyance by one of the trustees, while the other trustee was acting as such, would not pass the legal title to the premises.").

A settlor-co-trustee, who is also the sole lifetime beneficiary of trust income and principal, cannot, acting alone as trustee, transfer the trust estate to a third person or to another co-trustee free of the trust.

### VI. Constructive Revocation

■ Daughter next contends that the quitclaim deed of the trust's real property, if valid, itself constitutes a constructive revocation of the trust, where such real property constituted the only asset of the trust. More specifically, she cites the Restatement (Third) of Trusts section 63 in support of the proposition that the quitclaim deed may serve to revoke, in part, the inter vivos trust. We disagree with the contention.

The quitclaim deed does nothing more than transfer to daughter the present interest of mother in the trust estate as trustee. *Michaelson v. Michaelson,* 939 P.2d 835 (Colo.1997) (quitclaim deed conveys present, but not beneficial interest); *see also Tuttle,* 852 P.2d at 1315.

Reliance on Restatement (Third) of Trusts section 63 in this situation is also unavailing because mother specifically designated the method of termination—an instrument in writing signed by mother and delivered to the trustees. Section 63(3) provides, "Absent contrary provision in the terms of the trust, the settlor's power to revoke or modify the trust can be exercised in any way that provides clear and convincing evidence of the settlor's intention to do so." In this case, the trust provided an explicit protocol for revocation and, therefore, extrinsic evidence of the settlor's intent in drafting the quitclaim deed is not pertinent here.

The quitclaim deed of the trust's real property does not constitute a constructive revocation of the trust.

### VII. Modified Case Management Order

■ Daughter also argues it was an error of law for the trial court to rule in a manner procedurally contrary to the trial court's MCMO and without hearing evidence either as to mother's intent in deeding the property and revoking the trust or as to the validity of the revocatory instrument. We disagree.

Daughter's argument is based on the MCMO, in which the trial court ordered the following:

A jury will be empaneled to determine the validity of the will; based on the jury's verdict, there will be a bench trial on the effect of the will, to include, without limitation, a ruling on whether such documents served to revoke [mother's] inter vivos trust.

More specifically, she argues that, based on the MCMO, sons' requests for relief in the C.R.C.P. 56(h) motion were not ripe, and the motion should have been denied.

■ At any time after the last required pleading, with or without supporting affidavits, a party may move for determination of a question of law. If there is no genuine issue of any material fact necessary for the determination of the question of law, the court may enter an order deciding the question. C.R.C.P. 56(h).

■ The cardinal rule in the interpretation of wills or other testamentary docu-

ments is that the testator's intent should be ascertained from the instrument itself and given effect. *Massachusetts Co. v. Evans,* 924 P.2d 1119, 1122 (Colo.App.1996). When the terms of a bequest are unambiguous, it is not permissible for a court to consider extrinsic evidence that casts doubt upon the meaning of the language used and renders such language susceptible of a different meaning. *In re Estate of Dewson,* 181 Colo. 189, 192, 509 P.2d 311, 312 (1973). In other words, intent must be determined from the language itself, and an unambiguous document cannot be explained by extrinsic evidence so as to dispute its plain meaning. *Fox v. I-10, Ltd.,* 936 P.2d 580, 582 (Colo.App.1996), *aff'd,* 957 P.2d 1018 (Colo.1998). Neither party claims the terms of the will are ambiguous.

Consequently, the trial court did not need to conduct an evidentiary hearing prior to resolving the C.R.C.P. 56(h) motion because mother's intent is not relevant here. We have presumed for the purposes of this opinion that the will is valid and that mother had a present intent to terminate the trust when she executed it. As harsh as it may sound, mother's intent does not make effective an otherwise ineffective means of transferring an interest or revoking a trust.

## VIII. Attorney Fees

 Sons request that we award them their attorney fees, pursuant to C.A.R. 38(d) and section 13-17-102, C.R.S.2009. More specifically, they argue that daughter brought a frivolous appeal. We disagree.

Section 13-17-102(2), C.R.S.2009, states:

[I]n any civil action of any nature commenced or appealed in any court of record in this state, the court shall award, by way of judgment or separate order, reasonable attorney fees against any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification.

Under section 13-17-102(4), C.R.S.2009, a court may assess attorney fees on its own motion if it finds that an attorney or party

has brought an action that lacked "substantial justification." An action lacks substantial justification if it is "substantially frivolous, substantially groundless, or substantially vexatious." § 13-17-102(4).

Appeals may be deemed frivolous in two distinct ways:

First, where an appeal is taken in a case in which "the judgment by the tribunal below was so plainly correct and the legal authority contrary to appellant's position so clear that there is really no appealable issue," the appeal is held to be *"frivolous as filed."* Second, even in cases in which genuinely appealable issues may exist, so that the taking of an appeal is not frivolous, the appellant's misconduct in arguing the appeal may be such as to justify holding the appeal to be *"frivolous as argued."*

*Castillo v. Koppes-Conway,* 148 P.3d 289, 292 (Colo.App.2006) (quoting *Dungaree Realty, Inc. v. United States,* 30 F.3d 122, 124 (Fed.Cir.1994)).

The issue in this case is the validity and effectiveness of two instruments that attempted to revoke the trust pursuant to its explicit terms, which is an issue of first impression in Colorado. The judgment of the trial court was not so plainly correct, nor was there misconduct on behalf of daughter in arguing the appeal. This appeal did not lack "substantial justification."

Sons' request for attorney fees is denied.

The trial court's order is affirmed.

Judge MILLER and Judge MÁRQUEZ * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24-51-1105, C.R.S.2009.