2015 CO 30M

CONCERNING THE APPLICATION FOR WATER RIGHTS OF EAST CHERRY CREEK VALLEY WATER AND SANITATION DISTRICT and Colorado Water Network, Inc. in Adams, Arapahoe, Denver, Douglas, Elbert, Larimer, Morgan, and Weld Counties

East Cherry Creek Valley Water and Sanitation District and Colorado Water Network, Inc., Applicant–Appellant/Cross–Appellees

v.

GREELEY IRRIGATION COMPANY, City of Greeley, Central Colorado Water Conservancy District, Groundwater Management Subdistrict of the Central Colorado Water Conservancy, Well Augmentation Subdistrict of the Central Colorado Water Conservancy District, Cache la Poudre Water Users Association, Lower Latham Reservoir Company, and Ogilvy Irrigating and Land Company, Opposer–Appellants

v.

Dick Wolfe, P.E. State Engineer, and David L. Nettles, P.E. Division Engineer, Water Division 1; and City of Aurora, Cross–Appellants

City of Englewood, Centennial Water and Sanitation District, City of Boulder, City of Thornton, Colorado Division of Wildlife, Equus Farms, Inc., Irrigationists Association Water District, Northern Colorado Water Conservancy District, and Public Service Company of Colorado, Opposer–Appellees.

Supreme Court Case No. 14SA179

Supreme Court of Colorado.

May 11, 2015

As Modified on Denial of Rehearing June 1, 2015

Attorneys for Applicant East Cherry Creek Valley Water and Sanitation District: Ryley Carlock & Applewhite, Brian M. Nazarenus, Susan M. Ryan, Denver, Colorado

Attorneys for the Applicant Colorado Water Network, Inc.: Law Office of Tod J. Smith, LLC, Tod J. Smith, Boulder, Colorado

Attorneys for Opposers Greeley Irrigation Company: Dietze and Davis, P.C., Star L. Waring, Gabriella Stockmayer, Mark Detsky, Boulder, Colorado

Attorneys for Opposers City of Greeley, Acting by and through its Water and Sewer Board: Trout, Raley, Montano, Witwer and Freeman, P.C., James S. Witwer, Douglas M. Sinor, Denver, Colorado, Greeley City Attorney's Office, Andrew B. Nicewicz, Greeley, Colorado

Attorneys for Opposers Central Colorado Water Conservancy District, Groundwater Management Subdistrict of the Central Colorado Water Conservancy District, and Well Augmentation Subdistrict of the Central Colorado Water Conservancy District: Lawrence Jones Custer Grasmick, LLP, Bradley C. Grasmick, Johnstown, Colorado

Attorneys for Opposers Cache La Poudre Water Users Association, Lower Latham Reservoir Company, and the Ogilvy Irrigating and Land Company: Fischer, Brown, Bartlett & Gunn, P.C., Daniel K. Brown, Donald. E. Frick, Fort Collins, Colorado

Attorneys for Opposers City of Aurora: Brownstein Hyatt Farber Schreck, LLP, Steven O. Sims, John A. Helfrich, Dulcinea Z. Hanuschak, Denver, Colorado

Attorneys for Opposers Centennial Water and Sanitation District: Buchanan and Sperling, P.C., Veronica A. Sperling, John D. Buchanan, Arvada, Colorado

Attorneys for Opposers Colorado State Engineer and Division Engineer for Water Division 1: Cynthia H. Coffman, Attorney General, Chad M. Wallace, Senior Assistant Attorney General, Denver, Colorado

Attorneys for Amicus Curiae the City of Loveland: Ryley Carlock & Applewhite, Brian M. Nazarenus, Susan M. Ryan, Denver, Colorado

Attorneys for Amicus Curiae the City of Thornton: Thornton City Attorney's Office, Margaret A. Emerich, City Attorney, Joanne Herlihy, Assistant City Attorney, Thornton, Colorado

No appearance by or on behalf of City of Boulder, Colorado Division of Wildlife, Equus Farms, Inc., Irrigationists Association Water District, Northern Colorado Water Conservancy District, and Public Service Company of Colorado.

JUSTICE HOBBS delivered the Opinion of the Court.

¶ 1 This appeal concerns a change of water right case filed by applicants East Cherry Creek Valley Water and Sanitation District and Colorado Water Network, Inc. (collectively "East Cherry Creek Valley"). East Cherry Creek Valley submitted an application for a change of water right involving shares it owns in the Greeley Irrigation Company ("GIC") for use in its water system. A prior change case, the Poudre Prai-

rie Decree,[1] employed a ditch-wide analysis for calculating the amount of historical consumptive use ascribable to each GIC share. Subsequent decrees involving a change of water right in connection with GIC shares have relied upon the ditch-wide historical consumptive use determination made in the Poudre Prairie Decree. In this case, East Cherry Creek Valley's application asserts its ability to use the same Poudre Prairie pro-rata allocation of consumptive use water to its shares as occurred for previously changed shares in the ditch system.

¶ 2 Accordingly, East Cherry Creek Valley filed a motion under C.R.C.P. 56(h) seeking three water court rulings: (1) that the earlier ditch-wide quantification in the Poudre Prairie Decree precluded requantification of East Cherry Creek Valley's water right after entry of that decree in 1998; (2) that East Cherry Creek Valley did not have the burden to establish claim preclusion through a showing of no changed circumstances; and (3) that the court should not allow evidence at trial regarding changed circumstances. The water court denied the motion.

¶ 3 East Cherry Creek Valley then sought an order from the water court entering the denial of its Rule 56(h) motion as a final judgment pursuant to C.R.C.P. 54(b). The State and Division Engineers ("the Engineers") opposed this motion. The water court granted East Cherry Creek Valley's 54(b) motion and certified its Rule 56(h) order as a final judgment. East Cherry Creek Valley presented three issues on appeal. The Engineers cross-appealed with two is-

sues and asked for dismissal of Cherry Creek Valley's appeal, arguing that the water court's order did not constitute a final judgment on any claim for relief in the underlying change case.[2]

¶ 4 We agree with the Engineers. We hold that this appeal is not properly before us under C.R.C.P. 54(b) because the trial court did not enter a final judgment on any claim for relief in this litigation. Here, East Cherry Creek Valley's application pleads one claim for relief: that the water court issue a change decree granting its change of water right application from irrigation use to domestic, municipal, augmentation, and exchange uses in connection with the 5.472 GIC shares it owns. Accordingly, we reverse the trial court's certification order, dismiss the appeal, and return this case for further proceedings consistent with this opinion.

## I.

¶ 5 On February 6, 2013, East Cherry Creek Valley filed an amended application with the water court for Division 1 seeking a change decree from the water court changing the place and type of use of in connection with 5.472 shares in the GIC, represented by Stock Certificate Nos. 3330 and 3370, for its water supply project. *See* First Amended Application for Change of Water Rights, 06CW40, Weld County District Court, Water Division 1 (Feb. 6, 2013). Previously, the water court quantified and decreed the historical consumptive use yield of all 519.7 GIC shares in Case No. 96CW658 (the "Poudre Prairie Decree"). In that case, the water

---

1. *In re Application for Water Right of the Poudre Prairie Mutual Reservoir & Irrigation Co.*, No. 96CW658, Weld County District Court, Water Division 1, June 15, 1998.

2. We summarize the five issues from the parties' opening and opening–answer briefs on this direct appeal as follows:
    1. Whether the water court erred by limiting the preclusive effect of the Poudre Prairie decree to the period prior to the entry of the decree.
    2. Whether *Williams v. Midway Ranches Property Owners Ass'n*, 938 P.2d 515 (Colo. 1997), created a rebuttable presumption that ditch-wide historical consumptive use quantifications are binding in future change cases involving the same ditch.

3. Whether the water court erred in holding that the Applicants have the initial burden of showing that no events have occurred since the Poudre Prairie decree was entered that would result in injury to other water users if the court were to apply the historical consumptive figures established in the Poudre Prairie decree.
4. Whether the water court erred in holding that volumetric limits may be relitigated for Greeley Irrigation Company's Fossil Creek Reservoir storage rights even though the Poudre Prairie Decree did not impose volumetric limits on the storage rights.
5. Whether the trial court erred by entering a final order under C.R.C.P. 54(b).

court found that the years 1950 to 1979 constituted a representative historical period of time for purposes of determining the historical beneficial consumptive irrigation use made of GIC shares under their attendant adjudicated water rights' priorities. Using this representative period, the court determined the yield per GIC share to be 10.31 acre-feet annually. Entered June 15, 1998, the Poudre Prairie Decree recited that the ditch-wide quantification of GIC shares could be relied upon in future change of water right applications absent "a showing of subsequent events which were not addressed by this court herein and which are germane to the question of injury."

¶ 6 Various water rights owners have since relied on the Poudre Prairie ditch-wide quantification in their change of water right applications, and the water court has allowed these applicants to predicate their applications on an amount of 10.31 acre-feet annually being available to each share.[3] Contesting East Cherry Creek Valley's reliance on the ditch-wide quantification in this case, the Engineers raised the issue of changed circumstances since entry of the 1998 decree. East Cherry Creek Valley sought preclusion of that factor from litigation. Filed prior to any pre-trial deadlines, its C.R.C.P. 56(h) motion requested that the water court clarify whether the 1998 ditch-wide historical use quantification was entitled to preclusive effect and, if not, which party had the burden of proving changed circumstances.

¶ 7 In its January 28, 2014 order, the water court ruled on East Cherry Creek Valley's motion for determination of questions of law. The order addressed the scope of reliance on previously decreed ditch-wide historical consumptive use determinations and which party bears the burden of proving changed circumstances in view of our decision in *Williams v. Midway Ranches Property Owners Ass'n,* 938 P.2d 515 (Colo.1997). The water court concluded that, "if subsequent events exist that were not previously addressed by the court and said events are germane to the issue of injury," then the historical consump-

3. The water court has adopted the ditch-wide historical consumptive use findings from the Poudre Prairie Decree as recently as 2013. *See*

tive use quantification from the Poudre Prairie Decree would be subject to requantification. Based on this conclusion, the water court limited the preclusive effect of the Poudre Prairie Decree to the period before entry of that decree on June 15, 1998. Additionally, the water court determined that East Cherry Creek Valley had the "initial burden of showing that no events have occurred since the Poudre Prairie decree was entered that would result in injury to other water users."

¶ 8 Following entry of the order on the motion for determination of law, East Cherry Creek Valley moved for the certification of that order as final and appealable pursuant to Colorado Rule of Civil Procedure 54(b). The Engineers opposed certification of the order. After full briefing on the motion, the water court certified the Rule 56(h) order as final and appealable under Rule 54(b). In its certification order, the water court specifically cited the need for this court to clarify the scope of the preclusive effect of ditch-wide historical consumptive use quantifications and to resolve which party has the burden of proving changed circumstances under *Midway Ranches.*

## II.

¶ 9 We hold that this appeal is not properly before us under C.R.C.P. 54(b) because the trial court did not enter a final judgment on any claim for relief in this litigation. Here, East Cherry Creek Valley's application pleads one claim for relief: that the water court issue a change decree granting its change of water right application from irrigation use to domestic, municipal, augmentation, and exchange uses in connection with the 5.472 GIC shares it owns.

### A. C.R.C.P. 54(b) Jurisdiction

¶ 10 As a threshold matter, we address the Engineers' contention that the trial court erred in directing the entry of a final judgment under C.R.C.P. 54(b) and, that consequently, we must dismiss this appeal. That rule provides:

Case No. 11CW20; *see also* Case Nos. 10CW173, 05CW54, 05CW47, 03CW348, 99CW232, and 97CW78.

*When more than one claim for relief is presented in an action,* whether as a claim, counterclaim, cross-claim or third-party claim, or when multiple parties are involved, *the court may direct the entry of a final judgment as to one or more but fewer than all of the claims* or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims, or parties and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

(Emphasis added.)

¶ 11 Thus, Rule 54(b) creates an exception to the universal requirement that the trial court's final judgment must resolve all claims for relief in a case before a party can bring an appeal. *See* § 13–4–102(1), C.R.S. (2014); C.A.R. 1(a). A final judgment is one that ends the particular action and leaves nothing more for the trial court to do to completely determine the rights of the parties. *In re Estate of McCreath,* 240 P.3d 413, 417 (Colo.App.2009); *see also Driscoll v. Dist. Court,* 870 P.2d 1250, 1252 (Colo.1994) (holding that a judgment is final when it disposes of the entire litigation on the merits). A trial court may issue a Rule 54(b) certification only if three requirements are met: (1) the decision certified must be a ruling upon an entire claim for relief; (2) the decision certified must be final in the sense of an ultimate disposition of an individual claim; and (3) the trial court must determine that there is no just reason for delay in entry of a final judgment on the claim. *Lytle v. Kite,* 728 P.2d 305, 308 (Colo.1986). While the "no just reason for delay" question is committed to the trial court's discretion, the other two requirements are "not truly discretionary." *Id.*

¶ 12 An appellate court's jurisdiction to entertain the appeal of a judgment certified pursuant to Rule 54(b) depends upon a correct certification. *Harding Glass Co. v. Jones,* 640 P.2d 1123, 1126 (Colo.1982). A trial court cannot treat as final that which is not final. *Id.* at 1125. We review de novo the legal sufficiency of the trial court's C.R.C.P. 54(b) certification. *Richmond Am. Homes of Colo., Inc. v. Steel Floors, LLC,* 187 P.3d 1199, 1203 (Colo.App.2008)

¶ 13 After considering the requirements of Rule 54(b), the water court in this case concluded:

*Before any party spends additional time and resources on engineering, this court believes it would be beneficial for the Supreme Court to give the parties direction as to how this case should proceed.* There are potentially far reaching implications associated with the resolution of these issues and *an appeal will further the interest of judicial administration by adding clarity* to the preclusive effect of ditch-wide decrees, and which party has the burden to demonstrate whether a change in circumstances have or have not occurred since entry of the decree.

(Emphasis added.)

¶ 14 However, the interest of judicial administration is not a sufficient reason to make a Rule 54(b) certification without an attendant final judgment on a claim for relief. Rule 54(b) provides for an appeal of a judgment resolving either an entire claim in a multi-claim action or a single claim against one of many parties.

¶ 15 A "claim" is the aggregate of operative facts which give rise to a right enforceable in the courts. *Kieckhafer v. Indus. Claim Appeals Office,* 2012 COA 124, ¶ 15, 284 P.3d 202, 207. The ultimate determination of application of Rule 54(b) certification depends on whether the underlying factual bases for recovery state a number of different claims that could be separately enforced or involve a multiplicity of defendants against which a claim could be separately enforced *Kempter v. Hurd,* 713 P.2d 1274, 1278 (Colo.1986).

### B. Claim for Relief in a Change of Water Right Application

¶ 16 We now examine what constitutes a claim for relief in a change of water right case. The General Assembly has defined a "water right" as a "right to use in accordance with its priority a certain portion of the waters of the state by reason of the appropriation of the same." § 37–92–103(12), C.R.S. (2014). One must own a water right in order to change it. *Bd. of Cnty. Comm'rs v. Upper Gunnison River Water Conservancy Dist.*, 838 P.2d 840, 855 (Colo.1992) (concluding that only the owner of a decreed water right has the requisite legal interest to obtain a change in the water right and that a contrary view would undermine the rights and obligations acquired by persons granted decrees as the result of water adjudications). Shares of stock in a mutual ditch company represent a pro-rata ownership in the water right of the company. *Midway Ranches*, 938 P.2d at 525; *Jacobucci v. Dist. Court*, 189 Colo. 380, 541 P.2d 667, 672 (1975). Property rights in water are unique in that they are usufructuary; ownership of the resource remains in the public, and a right to use water exists within the limitations of Colorado's prior appropriation doctrine. *See* Colo. Const. art XVI, § 5; § 37–92–103(12); *see also Kobobel v. Colo. Dep't of Natural Res.*, 249 P.3d 1127, 1130 (Colo.2011) (explaining that a vested priority date has always been subject to the rights of senior water right holders, as well as the amount of water available in the tributary system under Colorado's prior appropriation doctrine).

¶ 17 A change of water right application [4] is considered to be a complaint under C.R.C.P. 15, and a statement of opposition is considered to be a responsive pleading.[5] Colo. Unif. Water Ct. R. 4(a). Correspondingly, the "claim" in a change of water right application is the aggregate of operative facts that give rise to the right to a change decree.

¶ 18 A water right owner may apply to change the type of use, location of use, time of use, and/or point of diversion of a water right.[6] The change of water right must be adjudicated into a change decree, and its issuance is subject to a two-step factual inquiry into: (1) the scope, measure, and limit of the water right proposed to be changed and (2) the conditions necessary to protect against injury to other decreed water rights. *Empire Lodge Homeowners' Ass'n v. Moyer*, 39 P.3d 1139, 1147 (Colo.2001).

¶ 19 First, the right to a decree changing the usufructuary right is limited in quantity and time by the appropriator's actual historical beneficial use. *Farmers Reservoir & Irrigation Co. v. Consol. Mut. Water Co.*, 33 P.3d 799, 807 (Colo.2001); *Weibert v. Rothe Bros.*, 200 Colo. 310, 618 P.2d 1367, 1371–72 (1980); *see also* §§ 37–92–103(5), 37–92–302, 37–92–305(3)–(4), C.R.S. (2014). Quantification of the amount of water beneficially consumed guards against rewarding wasteful practices or recognizing water claims that the nature and extent of the appropriator's need do not justify. *Santa Fe Trail Ranches Prop. Owners Ass'n. v. Simpson*, 990 P.2d 46, 54–55 (1999). Indeed, actual application of the water to the appro-

---

4. The form for a change of water right application, currently "JDF 299W," is posted on the Colorado Courts webpage at: https://www.courts.state.co.us/Forms/PDF/JDF%20299W%20Application%20for%20change%20of%20water%20right%20R7-13.pdf.

5. Colorado Rules of Civil Procedure govern procedure and practice for water cases as special statutory proceedings insofar as they are consistent with the applicable water court rules and statutes. C.R.C.P. 81(a).

6. As defined by statute,

"Change of water right" means a change in the type, place, or time of use, a change in the point of diversion except as specified in section 37–86–111(2), a change from a fixed point of diversion to alternate or supplemental points of diversion, a change from alternate or supplemental points of diversion to a fixed point of diversion, a change in the means of diversion, a change in the place of storage, a change from direct application to storage and subsequent application, a change from storage and subsequent application to direct application, a change from a fixed place of storage to alternate places of storage, a change from alternate places of storage to a fixed place of storage, or any combination of such changes. The term "change of water right" includes changes of conditional water rights as well as changes of water rights.

priator's beneficial use becomes the basis, measure, and limit of the right. *Id.* at 53. An applicant must be able to show the legal extent of its water right interest before it can be changed to ensure that no injury occurs in the process.[7] *Widefield Water & Sanitation Dist. v. Witte*, 2014 CO 81, ¶ 20, 340 P.3d 1118, 1124 ("[W]hen the owner of a water right files an application to change its use, the water court scrutinizes proposed alterations to existing decreed rights that may injure other decreed water rights." (internal quotation marks omitted)).

¶ 20 The second part of the water court's inquiry concerns the decree conditions necessary to ensure that the change will not injuriously affect other decreed water rights.[8] Thus, a change decree contains conditions that differ from those contained in the prior decree. This two-step examination facilitates transfers of water rights, allows continued application of the appropriated water to specified beneficial uses at identified locations, and ensures that a valid appropriation will continue in effect under provisions in the change decree—while maintaining return flow patterns, alleviating material injury to other water rights, and preventing enlargement of the water right. *High Plains A & M, LLC v. Se. Colo. Water Conservancy Dist.*, 120 P.3d 710, 718–19, 721 (Colo.2005).

### C. Application to This Case

■ ¶ 21 The amount of consumptive use water available to East Cherry Creek Valley from the 5.472 GIC shares it owns, for purposes of its change application, is a threshold

inquiry in the process of fashioning a change decree. A determination of historical consumptive use must be accompanied by a further inquiry into what decree conditions are necessary to avoid injury to other decreed water rights when the change of use is put into effect. The water court's Rule 56(h) order and Rule 54(b) certification in this case reserved factual issues for trial involving both the quantity of water attributable to East Cherry Creek Valley's GIC shares and the conditions necessary to protect against injury to other water rights. *See Danielson v. Castle Meadows, Inc.*, 791 P.2d 1106, 1115 (Colo.1990) (holding that if the water court finds that injury will occur to vested rights, it must impose terms and conditions on the augmentation plan to remedy such injury).

¶ 22 East Cherry Creek Valley's application proposes moving irrigation water rights from the system where the originally decreed appropriation matured, so that it can divert the water at different points and at different rates for changed uses at locations other than originally decreed. *See* First Amended Application. While a changed water right retains the original decree's priority date, East Cherry Creek Valley may be required to relinquish a portion of the water available from its shares in order to preserve return flow patterns upon which other water rights depend and make possible the out-of-priority diversions and exchanges its water supply plan envisions.[9] The amount consumptive use of water legally available for its sought-for decree authorizing the change of water right is a predicate to East Cherry Creek

§ 37–92–103(5).

7. A showing of actual beneficial use aids in the determination of whether a change will injuriously affect others. *See Strickler v. City of Colo. Springs*, 16 Colo. 61, 26 P. 313, 316 (1891); *Santa Fe Trail Ranches*, 990 P.2d at 53–54.

8. Section 37–92–305(3)(a) states, in relevant part: "A change of water right ... shall be approved if such change ... will not injuriously affect the owner of or persons entitled to use water under a vested water right or a decreed conditional water right."

9. To assist discussion of terms and conditions necessary to prevent injury, applicants are encouraged to prepare and circulate a proposed ruling and proposed decree to the referee, the

division engineer, and the parties in advance of the initial status conference. *See* Colo. Unif. Water Ct. R. 6(h). If the referee finds it unlikely the application and objections can be resolved without adjudication by a water judge, or the applicant or any opposer makes a motion 'to refer, the referee will refer the application to a water judge in accordance with section 37–92–303, C.R.S. (2014). When the referee refers the application to a water judge, or if a protest to the referee's ruling is filed pursuant to section 37–92–304, C.R.S. (2014), the applicant at the time of its initial C.R.C.P. 26(a)(2) disclosures must provide proposed findings of fact, conclusions of law, and a proposed decree. Opposers then provide comments on the proposed decree, including specific decree provisions suggested by the opposers to prevent injury. Colo. Unif. Water Ct. R. 11(b)(5)(F).

Valley's application, but it is not independent from conditions the water court may include in the change decree to protect against injury to existing decreed water rights. Together, the operative facts pertaining to both of these inquires constitute a claim for relief that is properly before the water court and, upon final judgment and entry of the change decree, appealable to us on direct appeal. § 13–4–102(1)(d).

¶ 23 In contrast, claim and issue preclusion are affirmative defenses to the assertions of opposing parties in a water case, not separate claims for relief.[10] *See Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84 (Colo.1999) (stating issue preclusion is an affirmative defense). The water court's resolution of the affirmative defense in this case did not resolve the change of water right claim for relief, and, therefore, no final judgment on a claim underlies the water court's 54(b) certification.

¶ 24 An example of a water court final judgment on a claim in a change of water right application case resulting from a Rule 56(h) order is *ISG, LLC v. Ark. Valley Ditch Ass'n*, 120 P.3d 724, 731 (Colo.2005). There, a group of shareholders in a mutual ditch company ("ISG") applied for a change of water right. ISG moved for a C.R.C.P. 56(h) ruling of law that the anti-speculation doctrine does not apply to change applications. *Id.* The water court's ruling on the C.R.C.P. 56(h) motion made dismissal inevitable because the water court found ISG's application insufficient as a matter of law—the applicant failed to identify places where the water would be put to actual beneficial use under the sought-for change decree. *Id.* No party submitted a motion for 54(b) certification, but the water court's ruling on the motion consti-

tuted an appealable sua sponte summary judgment order dismissing the change of water rights application. *Id.; see also McCreath,* 240 P.3d at 417 (holding that because the Rule 56(h) order had a final, dispositive effect as to claims pending in the litigation and the order essentially constituted a partial summary judgment under Rule 56(a), it was properly certified under C.R.C.P. 54(b)); *cf. Wolfe v. Sedalia Water & Sanitation Dist.,* 2015 CO 8, ¶¶ 8–11, 343 P.3d 16, 21 (reviewing the water court's order granting partial summary judgment only after a final judgment on the claim—the subsequent entry of Sedalia's proposed change of water right decree).

¶ 25 The purpose of a Rule 56(h) motion is to "allow the court to address issues of law which are *not* dispositive of a claim," i.e., allow the court to address issues of law which do not warrant summary judgment. *Bd. of Cnty. Comm'rs v. United States,* 891 P.2d 952, 963 n.14 (Colo.1995) (emphasis added) (quoting 5 Robert Hardaway & Sheila Hyatt, *Colorado Civil Rules Annotated* § 56.9 (1985)). By definition, a Rule 56(h) order will not be subject to Rule 54(b) certification unless the determination of a question of law has a final, dispositive effect on an entire claim. *See McCreath,* 240 P.3d at 413. Accordingly, a summary judgment or dismissal ruling regarding one or more claims is a necessary prerequisite for a 54(b) certification. *See, e.g., Lytle,* 728 P.2d at 308–09 (explaining that a judgment against fewer than all of the parties necessarily requires a final ruling on at least one entire claim as to at least one party); *United States v. Bell,* 724 P.2d 631, 645–46 (Colo.1986) (holding that a partial summary judgment

---

10. Although the parties and the water court discuss the preclusive effect of the ditch-wide quantification as "res judicata," we clarify the matter as one clearly giving rise to "issue preclusion" because East Cherry Creek Valley is asserting an affirmative defense here to the factor of requantification—which is merely one of multiple inquiries in a change of water right application. *See Wolfe v. Sedalia Water & Sanitation Dist.,* 2015 CO 8, ¶¶ 23, 28–29, 343 P.3d 16, 24–26 (discussing the applicability of claim and issue preclusion to water cases and clarifying that issue preclusion is the proper doctrine for inquiry into

historical consumptive use quantification); *see also Argus Real Estate, Inc. v. E–470 Pub. Highway Auth.,* 109 P.3d 604, 608 (Colo.2005) (clarifying that while "we have used the phrases interchangeably ... as noted by the United States Supreme Court in *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n.1 [104 S.Ct. 892, 79 L.Ed.2d 56] (1984), use of the phrases 'res judicata' and 'collateral estoppel' can lead to confusion because 'res judicata' is commonly used as an overarching label for both claim and issue preclusion." (parallel citations omitted)).

order dismissing one or more parties is a final judgment under C.R.C.P. 54(b)).

¶ 26 In conclusion, factual issues remain to be resolved by the water court in this case, including how much water is available for use for purposes of the change of water right and the terms and conditions necessary to prevent injury to other decreed water rights, before the water court may enter a final judgment and decree for purposes of appeal.

¶ 27 Because there is no final judgment on a claim for relief within the purview of Rule 54(b), we are without jurisdiction to entertain this appeal. *Linnebur v. Pub. Serv. Co. of Colo.*, 716 P.2d 1120, 1122 (Colo.1986).

## III.

¶ 28 Accordingly, we reverse the water court's certification order, dismiss the appeal, and return this case for further proceedings consistent with this opinion.