2012 CO 35

Concerning the REVISED ABANDON-MENT LIST OF WATER RIGHTS IN WATER DIVISION 2 and Concerning the Protest of Nolan G. Thorsteinson and Margie M. Thorsteinson in Pueblo County, Colorado.

John C. Harrison, Personal Representative of the Estate of Nolan G. Thorsteinson and The Margie (Dotts) M. Thorsteinson Trust, Protestants–Appellants

v.

Harold D. Simpson, State Engineer for the State of Colorado and Steven J. Witte, Division Engineer for Water Division 2, Respondents–Appellees.

Concerning the Application for Change of Water Right of John C. Harrison, as Personal Representative of the Estate of Nolan G. Thorsteinson and The Margie (Dotts) M. Thorsteinson Trust in Pueblo County, Colorado.

John C. Harrison, as Personal Representative of the Estate of Nolan G. Thorsteinson and The Margie (Dotts) M. Thorsteinson Trust, Applicants–Appellants

v.

St. Charles Mesa Water District; John W. Singletary; S. Warren Chambers; Steven J. Witte, Division Engineer; and Harold D. Simpson, State Engineer, Opposers–Appellees.

Nos. 11SA136, 11SA54.

Supreme Court of Colorado, En Banc.

May 14, 2012.

John W. Suthers, Attorney General, Jennifer L. Mele, Assistant Attorney General, Denver, Colorado, Attorneys for State and Division Engineers.

Max I. Exline, Pueblo, Colorado, Attorney for John C. Harrison, Personal Representative of the Estate of Nolan G. Thorsteinson and The Margie (Dotts) M. Thorsteinson Trust.

S. Warren Chambers, pro se.

No appearance by or on behalf of St. Charles Mesa Water District and John W. Singletary.

Justice COATS delivered the Opinion of the Court.

¶ 1 Harrison appealed directly to this court from adverse rulings of the Water Court for Water Division No. 2 in two separate cases. With regard to Harrison's Application for a Change of Water Right, the water court granted the Engineers' motion to dismiss at the close of Harrison's case, finding that he was required, but failed, to establish the historic use of the right as to which he sought a change in the point of diversion. With regard to Harrison's protest to the inclusion of the interests he claimed in the Mexican Ditch on the Division Engineer's decennial abandonment list, the water court granted the Engineer's motion for abandonment, as a stipulated remedy for Harrison's failure to succeed in his change application.

¶ 2 Because Harrison neither proved historic use of the right for which he sought a change nor was excepted from the requirement that he do so as a precondition of changing its point of diversion; and because denying a change of water right for failing to prove the historic use of the right does not amount to an unconstitutional taking of property, the water court's dismissal of Harrison's application is affirmed. *Harrison v. St. Charles Mesa Water Dist.*, 11SA54. Because, however, Harrison did not stipulate to an order of abandonment as the consequence of failing to succeed in his change application, but only as the consequence of failing to timely file an application reflecting historic use, a condition with which he complied, the water court's order granting the Engineers'

motion for abandonment is reversed. *Thorsteinson v. Simpson,* 11SA136.

## I.

¶ 3 The two appeals consolidated for resolution here both arise from an attempt by John C. Harrison, acting as personal representative for the estate of Nolan G. Thorsteinson and trustee of The Margie (Dotts) M. Thorsteinson Trust, to avoid an order declaring abandoned a disputed 1.04 c.f.s. interest in the Mexican Ditch. In May 2001, a disputed 1 c.f.s. interest of the Thorsteinsons and a separately disputed .04 c.f.s. interest of a neighbor were placed on the Division Engineer's decennial abandonment list, and protests as to each were filed in the Water Court for Water Division No. 2. Action on these protests was apparently continued for several years, and in 2006, after the Thorsteinsons' had acquired the separate .04 c.f.s. interest, they entered into a stipulation with the State and Division Engineers. According to the stipulation, the Thorsteinsons agreed to file, by May 31, 2006, an application for change in the point of diversion reflecting the historic use of the water right and the Engineers agreed to move the court to remove the combined 1.04 c.f.s. interest from the revised abandonment list. The stipulation further specified that the Thorsteinsons would not be permitted to divert the 1.04 c.f.s. of these claimed rights at any location other than the originally decreed point of diversion until such change case was adjudicated or a temporary substitute water supply plan was approved by the State Engineers Office, and in the event that the Thorsteinsons failed to file an application as prescribed by the stipulation or filed but subsequently withdrew such application, the Thorsteinsons would not oppose a motion of the Engineers to have the right declared abandoned.

¶ 4 On May 11, 2006, Harrison, as personal representative for the estate and trustee of the trust, filed an application for change of the water right, along with a description of the water right as to which a change in the point of diversion was sought; a map showing the approximate location of the historic point of diversion; and the State Engineer's diversion records for the Mexican Ditch covering the years from 1918 to 1957. On the same day, the parties jointly moved the water court to accept the stipulation, remove the protested 1.04 c.f.s. right from the revised abandonment list, and dismiss the case. Their motion was granted and the case was dismissed a week later. Harrison's change application was opposed by the St. Charles Mesa Water District and the Division Engineer, as well as the holders of several intervening rights. In January 2011, nearly five years later, the application was finally heard, with the only witness to testify being Harrison himself.

¶ 5 Although Harrison was not qualified as an expert, to the best of his recollection and understanding, he traced the history of the disputed interests from a 4.0 c.f.s. water right on the Mexican Ditch with an appropriation date of 1867. Harrison testified that the headgate in use on the Mexican Ditch at the time washed out in the 1950s and had never been replaced, but that at least some portion of the 1.04 c.f.s. interest being claimed continued to be used by various owners to irrigate alfalfa and corn and for gardening by pumping water directly from the St. Charles River. Harrison's testimony was largely directed at demonstrating the attempts of Nolan Thorsteinson after 1976 to sell the water rights, and it offered Harrison's reasons for not believing the opposers would be injured by his proposal to install and divert from a water pipe as much as two miles downstream from the original point of diversion.

¶ 6 At the close of Harrison's testimony, the water court granted the Engineers' C.R.C.P. 41(b) motion, denying the application on its merits for failure of the applicant to prove by a preponderance of the evidence the historic use of the water right as to which a change in point of diversion was sought. Approximately one month later, in the action involving the original protest by the Thorsteinsons, the action that had been dismissed at the request of the Engineers, the Engineers filed a motion to have the water right declared abandoned. The Engineers asserted that Harrison's failure to sufficiently prove historic use to support a change in the point of diversion was tantamount to a breach of the stipulation, mandating an order

of abandonment. The water court granted the motion, declaring the 1.04 c.f.s. right abandoned.

¶ 7 Harrison appealed both rulings directly to this court.

## II.

¶ 8 It is firmly established in this jurisdiction that the measure of a water right for purposes of a change application, including a change in the point of diversion, is its actual historic consumptive use under the decree. *State Eng'r v. Bradley*, 53 P.3d 1165, 1169 (Colo.2002) (citing *Williams v. Midway Ranches Prop. Owners Ass'n, Inc.*, 938 P.2d 515, 521 (Colo.1997)). An absolute decree, whether expressed in terms of a flow rate or a volumetric measurement, does not itself represent an adjudication of actual historic use of the right but is implicitly further limited to actual historic use over a representative period. *Id.* at 1170. Therefore, in order to determine that a requested change of a water right is merely that, and will not amount to an enlargement of the right, actual historic use must, in some fashion and to some degree of precision, be quantified. *Id.* Even if it seems clear that no other rights would be affected solely by a particular change in the location of diversion, it is essential that a change also not enlarge the existing right. *Trail's End Ranch, L.L.C. v. Colorado Div. of Water Res.*, 91 P.3d 1058, 1062 (Colo.2004) (denying owner priority of existing right for diversion several thousand feet downstream on owner's same property, in the absence of proof of historic use sufficient to justify change of water right).

¶ 9 On appeal, Harrison does not contend that he satisfactorily proved the historic consumptive use of the right for which he seeks a change but rather that he falls within an exception to that requirement, carved out by this court in *Flasche v. Westcolo Co.*, 112 Colo. 387, 149 P.2d 817 (1944). Harrison simply misunderstands the import of our holding in *Flasche*. Rather than creating an exception to the requirement to prove historic use as the measure of any water right susceptible of being changed, *Flasche* merely spoke to the representative period over which a showing of historic beneficial use could be sufficient.

¶ 10 In *Flasche*, much like the instant case, the petitioner sought a change in the point of diversion for his decreed right, sometime after the structure upon which his diversion depended—first a flume and then a pipe carrying water across Clear Creek—had washed away. *Id.* at 390–91, 149 P.2d at 819. Although we there returned the case to the district court to first resolve the question whether the petitioner's water right had actually been abandoned through inaction, we also held that in the absence of a finding of abandonment, the extent of the right subject to change should be measured by the applicant's demonstrated continuous use up to the point that washouts beyond his control deprived him of any further use of the right. *Id.* at 393–94, 149 P.2d at 820. While our opinion in *Flasche* may not have been expressed in precisely the terms more typical of our later cases, we made clear that the petitioner would then be entitled to change the point of diversion with regard to his entire decreed right, not because historic use of the right was inconsequential under the circumstances of that case, but for two separate reasons. We found that the change application in *Flasche* was supported both by evidence demonstrating continuous use of the full decreed right, for its decreed purpose, up until the washout and by evidence that none of the protestants would be otherwise harmed by the change. *Id.*

¶ 11 We firmly reject the assertion that whenever the holder of a water right would be permitted to repair a damaged structure without applying for a change, he must also be permitted to replace that structure with a new and different one, at a new point of diversion, without applying for a change of water right and establishing the historic consumptive use of the right with regard to which he seeks a change. Unlike *Flasche*, however, in this case we need not specify a relevant period over which historic use should be measured because the water court did not find, and Harrison does not assert, that continuous beneficial use of the right was proved, even up to the point at which the applicable structure was destroyed.

¶ 12 Nor does the denial of a change of water right for failing to prove historic use

unconstitutionally deprive an applicant of property without just compensation, in violation of either the Fifth Amendment to the United States Constitution or article II, section 15 of the Colorado Constitution. Although we have characterized a water right, including the right to change its point of diversion, as a property right, we have also made clear that the right in question is usufructuary in nature, merely permitting the use of water within the limitations of the prior appropriation doctrine. *Kobobel v. Colorado Dept. of Natural Res.*, 249 P.3d 1127, 1134 (Colo.2011); *Bradley*, 53 P.3d at 1168; *Santa Fe Trail Ranches v. Simpson*, 990 P.2d 46, 54 (Colo.1999). The right itself is created by appropriating unappropriated water and putting it to a beneficial use. As we have often held, an absolute decree does not represent an adjudication of the full measure of the right but is implicitly further limited in quantity by historic beneficial consumptive use according to the decree. Limiting a change in water right to the extent of established historic use, therefore, does not deprive an applicant of an existing property right but rather ensures against an enlargement of that right.

### III.

¶ 13 The failure of an applicant for a change of water right to prove historic use by a preponderance of the evidence, however, does not establish an abandonment of that right, and the water court in this case did not so hold. Rather, the water court found abandonment of the 1.04 c.f.s. right to be the stipulated remedy of the parties for Harrison's failure to include in his application a historic use analysis. The water court did not further specify precisely what kind of analysis it understood the stipulation to require or when such an analysis would have to be produced, apparently concluding simply that Harrison's failure to satisfy his burden at the change proceeding was dispositive of the matter.

¶ 14 As we have often indicated, stipulations approved and entered as orders of the court are construed as other contracts between the parties. *Cherokee Metro. Dist. v. Upper Black Squirrel Creek Designated Ground Water Mgmt. Dist.*, 247 P.3d 567, 573 (Colo.2011); *City of Golden v. Simpson*, 83 P.3d 87, 93 (Colo.2004). Consistent with contract principles, a stipulation must be understood according to the intention of the parties as expressed in the agreed-upon language. *Upper Black Squirrel Creek*, 247 P.3d at 573; *City of Golden*, 83 P.3d at 93. In the absence of any contrary manifestation in the contract itself, contractual terms that have a generally prevailing meaning must be interpreted according to that meaning, *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313–14 (Colo.1984), and by reference to all parts and provisions of the agreement and the nature of the transaction that forms its subject matter, *Christmas v. Cooley*, 158 Colo. 297, 301, 406 P.2d 333, 335 (1965). Where the language of a stipulation itself is susceptible of more than one reasonable interpretation, and is therefore ambiguous, the facts and circumstances of its execution may also be considered in determining the particular reasonable interpretation actually intended by the parties. *Cherokee Metro. Dist. v. Simpson*, 148 P.3d 142, 146 (Colo. 2006); *Lane v. Urgitus*, 145 P.3d 672, 679 (Colo.2006).

¶ 15 The only provision of the stipulation in this case making any reference to a remedy of abandonment required the Thorsteinsons to file an application for a change in the point of diversion by May 31, 2006, reflecting the historic use of the water right at issue, and it specified abandonment as the remedy, should the Thorsteinsons fail to file "such application" by May 31, 2006, or file but subsequently withdraw "said change application."[1] The Engineers concede that the stipulated requirement for the application to

---

1. In its entirety, paragraph 5(a) of the stipulation reads:

   Protestants shall file by May 31, 2006, an application for a change in the point of diversion for the 1.04 cfs of the Mexican Ditch water right owned by Protestants, which application shall reflect the historic use of that portion of the Mexican Ditch water right. If Protestants do not file such application by May 31, 2006, or file and subsequently withdraw said change application, the Protestant's water right on the Mexican Ditch shall be abandoned, and the Engineers will file a motion with the Court seeking an order to that effect. Protestants agree not to oppose such a motion.

"reflect the historic use" of the right cannot, standing alone, be understood to mandate adequate proof of historic use in the initial application itself or, for that matter, at any point in the proceedings. They reason, instead, that failing to "reflect the historic use" of the right to the extent required to actually succeed in the change application was tantamount to withdrawing the application, the stipulated consequence for which would be accession to an order of abandonment.

¶ 16 Not only does this interpretation fail to represent the only reasonable understanding, and therefore the unambiguous meaning, of the terms used in the stipulation; it is highly questionable whether it could represent any reasonable understanding of those terms whatsoever. Apart from the tenuousness of equating a deliberate attempt to thwart the timing requirement of the stipulation by withdrawing a timely filed application, on the one hand, and a failure to actually win, on the other, the facts and circumstances attending the execution of the stipulation militate against adopting this interpretation as something intended by the parties. A joint motion of the parties to immediately remove the contested right from the revised abandonment list and completely dismiss the action, filed contemporaneously with the timely filing of a change application, was hardly consistent with either a stipulation requiring the application to actually succeed or with an order of abandonment almost five years after the case had already been dismissed. To avoid the agreed-upon remedy of abandonment, the Thorsteinsons were obligated by the clear terms of the stipulation to do nothing more than file an application for a change in the point of diversion before May 31, 2006, reflecting the historic use of the right to be changed. Even the Engineers do not assert that this was something Harrison failed to do.

### IV.

¶ 17 Because Harrison neither proved historic use of the right for which he sought a change nor was excepted from the requirement that he do so as a precondition of changing its point of diversion; and because denying a change of water right for failing to prove the historic use of the right does not amount to an unconstitutional taking of property, the water court's dismissal of Harrison's application is affirmed. Because, however, Harrison did not stipulate to an order of abandonment as the consequence of failing to succeed in his change application, the water court's order granting the Engineers' motion for abandonment is reversed.