2015 CO 8

CONCERNING the APPLICATION FOR WATER RIGHTS OF SEDALIA WATER AND SANITATION DISTRICT IN DOUGLAS COUNTY,

Dick Wolfe, P.E. State Engineer, and David L. Nettles, P.E. Division Engineer, Water Division 1, Opposers–Appellants

v.

SEDALIA WATER AND SANITATION DISTRICT, Applicant–Appellee

and

Castle Pines Metropolitan District, Castle Pines North Metropolitan District, Centennial Water and Sanitation District, Ready Mixed Concrete Company, Town of Castle Rock, and United Water and Sanitation District, Opposers–Appellees.

Supreme Court Case No. 14SA12

Supreme Court of Colorado.

February 9, 2015

Attorneys for Opposers–Appellants State Engineer and Division Engineer for Water Division 1: Cynthia H. Coffman, Attorney General, Paul L. Benington, First Assistant Attorney General, Katherine A.D. Ryan, Assistant Attorney General, Denver, Colorado.

Attorneys for Applicant–Appellee Sedalia Water and Sanitation District: Buchanan and Sperling, P.C., Eric R. Potyondy, John D. Buchanan, Arvada, Colorado.

Attorneys for Opposer–Appellee Centennial Water and Sanitation District: Gilbert Y. Marchand, Jr., P.C., Gilbert Y. Marchand, Jr., Boulder, Colorado.

Attorneys for Amicus Curiae East Cherry Creek Valley Water and Sanitation District: Ryley Carlock & Applewhite, William B. Tourtillott, Brian M. Nazarenus, Sheela S. Stack, Susan M. Ryan, Denver, Colorado.

Attorneys for Amicus Curiae The Consolidated Mutual Water Company: Collins Cockrel & Cole, P.C., Evan D. Ela, Joseph W. Norris, Denver, Colorado.

Attorneys for Amicus Curiae Greeley Irrigation Company: Dietze and Davis, P.C., Star L. Waring, Gabriella Sotckmayer, Boulder, Colorado.

Attorneys for Amicus Curiae City of Greeley, Acting by and Through Its Water and Sewer Board: Trout, Raley, Montano, Witwer and Freeman, P.C., James S. Witwer, Douglas M. Sinor, Denver, Colorado, Greeley City Attorney's Office, Andrew B. Nicewicz, Greeley, Colorado.

Attorneys for Amici Curiae Central Colorado Water Conservancy District, Groundwater Management Subdistrict of the Central Colorado Water Conservancy District, and Well Augmentation Subdistrict of the Central Colorado Water Conservancy District: Lawrence Jones Custer Grasmick, LLP, Bradley C. Grasmick, Johnstown, Colorado.

Attorneys for Amicus Curiae The City of Thornton: White & Jankowski, LLP, Matthew L. Merril, David C. Taussig, Denver, Colorado, City of Thornton, Margaret A. Emerich, City Attorney, Joanne Herlihy, Assistant City Attorney, Thornton, Colorado.

Attorneys for Amicus Curiae City of Westminster: Carlson, Hammond & Paddock, LLC, Mary Mead Hammond, Lee H. Johnson, Mason H. Brown, Denver, Colorado

Attorneys for Amicus Curiae Coors Brewing Company: Burns, Figa & Will, P.C., Stephen H. Leonardt, Sarah M. Shechter, Courtney M. Shephard, Greenwood Village, Colorado, Molson Coors Brewing Company, Samuel Walker, Denver, Colorado.

Attorneys for Amicus Curiae Upper Eagle Regional Water Authority and Eagle River Water and Sanitation District: Porzak Browning & Bushong LLP, Glenn E. Porzak, Karen L. Henderson, William D. Wombacher, Boulder Colorado.

Attorneys for Amicus Curiae City of Northglenn: Fischer, Brown, Bartlett & Gunn, P.C., William R. Fischer, Donald E. Frick, Fort Collins, Colorado.

Attorneys for Amicus Curiae City of Aurora: Duncan, Ostrander & Dingess, P.C., Austin Hamre, Ryan P. McLane, John M. Dingess, Denver, Colorado.

Attorneys for Amicus Curiae Cache La Poudre Water Users Water Association and Lower Latham Reservoir Company: Fischer, Brown, Bartlett & Gunn, P.C., Daniel K. Brown, Fort Collins, Colorado.

Attorneys for Amicus Curiae The City of Fountain, Colorado: Alperstein & Covell P.C., Andrea L. Benson, Cynthia F. Covell, Denver, Colorado.

Attorneys for Amicus Curiae Upper South Platte Water Conservancy District: Lyons, Gaddis, Kahn, Hall, Jeffers, Dworak & Grant P.C., Madoline Wallace–Gross, Jeffrey J. Kahn, Longmont, Colorado.

Attorneys for Amicus Curiae Center of Colorado Water Conservancy District: Felt, Monson & Culichia, L.L.C., James W. Culichia, Colorado Springs, Colorado.

Attorneys for Amicus Curiae The Varra Companies: Petrock & Fendel, P.C., Frederick A. Fendel, III, Matthew S. Poznanovic, Denver, Colorado.

No appearance by or on behalf of: Castle Pines Metropolitan District, Castle Pines North Metropolitan District, Ready Mixed Concrete Company, Town of Castle Rock, and United Water and Sanitation District.

JUSTICE HOBBS delivered the Opinion of the Court.

¶ 1 This appeal concerns the historical beneficial consumptive use quantification of an 1872 irrigation right in a change of water right and augmentation plan proceeding involving water diverted from West Plum Creek in the South Platte River system, Water Division No. 1. Sedalia Water and Sanitation District ("Sedalia") is the current owner of a portion of that water right, which it acquired from Owens Brothers Concrete Company ("Owens Concrete"). The State and Division Engineers ("the Engineers") participated as parties in Owens Concrete's 1986 augmentation plan case. They also appear as parties in this case.

¶ 2 When the concrete company owned this portion of the originally decreed appropriation, it obtained a change of water right decree quantifying an annual average of 13 acre-feet of water available for use as augmentation plan credit for replacement of out-of-priority tributary groundwater depletions from a well. Having acquired the concrete company's interest in the 1872 priority, Sedalia claimed a right to the same amount of historical consumptive use water for its well augmentation plan in this case. On competing motions for summary judgment, the water court ruled that the doctrine of issue preclusion prohibited the Engineers from relitigating the quantification question, although the Engineers could raise the issue of abandonment at trial if they wished.

¶ 3 The issue the Engineers present for appeal concerns "a third successive change of the Ball Ditch water right" and whether its "average annual historical use last quantified by the second change decree" should be requantified in this proceeding to take into account "twenty-four years of subsequent nonuse."[1] In their briefs and at oral argument, the Engineers urge us to adopt a comprehensive rule that every change case triggers requantification of a water right. On the other hand, Sedalia asks us to adopt the polar opposite rule—that once determined in a previous change case, the amount of historical beneficial consumptive use allocated to the original appropriation carries through every subsequent change case and cannot be relitigated.

We adopt no such cosmic rule. Instead, we address the case before us in light of applicable claim and issue preclusion water cases. We affirm the water court's judgment in part and reverse it in part. We hold that issue preclusion applies to prevent relitigation of the historical beneficial consumptive use quantification made in the 1986 Owens Concrete change of water right and augmentation decree, but this legal doctrine does not prevent a water court inquiry into the 24 years of post-1986 nonuse the Engineers allege. On remand from this decision and in finalizing Sedalia's decree, the water court should take any evidence and legal argument offered by the parties on the issue of the alleged post-1986 nonuse. If the water court finds there has been prolonged unjustified nonuse of the water right between entry of

---

1. The issue on appeal is: "Whether, in a third successive change of the Ball Ditch water right, its historical use should be requantified based on the average annual historical use last quantified by the second change decree and twenty-four years of subsequent nonuse."

the prior change decree and the pending decree application, it may conclude that this constitutes a changed circumstance calling for the selection of a revised representative period of time for calculating the average annual consumptive use amount available for Sedalia's change of water right and augmentation decree.

## I.

¶ 4 On December 10, 1883, the Ball Ditch water right obtained a decree for a diversion rate of 3 cubic feet per second ("cfs") of water from West Plum Creek for irrigation with a priority date of April 19, 1872. Nearly a century later, on October 13, 1976, in Case No. W-2127, the District Court for Water Division No. 1 decreed Stephen Sump No. 1 as an alternate point of diversion for 0.4286 cfs of the 3 cfs Ball Ditch water right.

¶ 5 Later, Owens Brothers Concrete Company acquired an interest in 27.1% of the 0.4286 cfs of the Stephen Sump No. 1/Ball Ditch water right ("water right"). It filed an application in Case No. 83CW364 to change the right from irrigation use to augmentation plan use, to offset tributary groundwater depletions from a well it intended to operate in connection with its concrete plant. That change of water right proceeding involved quantification of historical beneficial consumptive use for the water right, as the water court had not previously adjudicated such a determination. The water court entered a stipulated decree in that case on December 3, 1986, wherein the Engineers participated as parties.[2] The decree determined the amount of historical beneficial consumptive use under the 27.1% interest in the Stephen Sump No. 1/Ball Ditch 1872 water right priority; 8.1 acres of irrigated farmland yielded an average annual historical benefi-

cial consumptive use of 13 acre-feet of water. The water court approved a change of water right for this amount as augmentation credit for use in the Owens Concrete augmentation plan.[3] The decreed place of use changed from the historically irrigated farmland to Owens Concrete's well. Conditions of the decree to prevent material injury to other water rights included dry-up of the originally irrigated 8.1 acres of land. The court determined that Owens Concrete was entitled to claim the replacement water credits every year.[4] No party appealed entry of the 83CW364 decree, and it became a final judgment.

¶ 6 Owens Concrete did not complete its intended well because a pumping test showed the capacity to withdraw tributary groundwater was less than anticipated at that location. The company left its 13 acre-feet of historical consumptive use water in the stream for 24 years pursuant to its augmentation plan, but never took credit for out-of-priority tributary groundwater depletions.

¶ 7 Sedalia, which provides water to municipal and industrial customers, purchased Owens Concrete's 27.1% interest in the Stephen Sump No. 1/Ball Ditch water right.[5] For an additional source of supply for its approved Case No. 93CW182 augmentation plan, Sedalia filed a change application in the case now before us, Case No. 10CW261. As part of the application, Sedalia sought approval of the historical beneficial consumptive use credit amount previously decreed in Owens Concrete's augmentation plan, Case No. 83CW364, for its own augmentation plan.

¶ 8 Sedalia and the Engineers settled all issues in the present case except whether the water court should requantify the annual average historical consumptive use amount of 13 acre-feet of water decreed to the original

---

2. The water referee issued its Findings and Ruling of the Referee and Decree of the Court on October 28, 1986. No party filed a protest to the referee's ruling, and the water judge approved the decree on December 3, 1986.

3. The decree also approved municipal, industrial, and commercial uses for the water.

4. The replacement plan schedule in the decree approved 0.5 acre-feet of credit in April; 1.1 acre-feet in May; 2.1 acre-feet in June and July;

1.5 acre-feet in August and September; 1.1 acre-feet in October and November; 0.7 acre-feet in December and January; and 0.6 acre-feet in February. The decree did not authorize augmentation plan credit for March.

5. Sedalia's wells to be used for out-of-priority pumping are located in a different area along the Plum Creek stream system than where the Owens Concrete well pump was to be installed.

1872 priority in Case No. 83CW364.[6] The parties filed a motion and cross-motion for summary judgment on this issue under C.R.C.P. 56. As a matter of law, the water court ruled that the Engineers could not relitigate the historical beneficial consumptive use amount determined in the Owens Concrete change case and, consequently, that amount would be fully available for purposes of Sedalia's change and augmentation plan. According to the water court, to hold otherwise would result in a de facto finding of abandonment of this part of the 1872 priority, depriving Sedalia of an opportunity to offer evidence rebutting the presumption of abandonment arising from a lengthy period of nonuse.[7] Conversely, at trial the Engineers could raise the issue of whether Sedalia had abandoned its interest in the water right obtained from Owens Concrete.

¶ 9 In concluding that the Engineers could raise the abandonment issue, but not the requantification issue, the water court stopped short of finding that abandonment was properly before the court. The Engineers had not alleged abandonment in their motion for partial summary judgment. After the court entered its order on the motions, the Engineers informed the court that they would not take the position that Sedalia had abandoned its interest in the Stephen Sump No. 1/Ball Ditch water right. Sedalia then filed a motion for entry of its proposed decree. After denying the Engineers' motion for reconsideration of the requantification question, the water court entered the 10CW261 decree in this case on December 10, 2013. This appeal followed.

## II.

¶ 10 We affirm in part and reverse in part the water court's judgment. We hold that issue preclusion applies to prevent relitigation of the historical beneficial consumptive

use quantification made in the 1986 Owens Concrete change of water right and augmentation decree, but this legal doctrine does not prevent the water court from inquiring into the 24 years of post-1986 nonuse the Engineers allege.

### A. Applicable Law

¶ 11 The water court's order granting partial summary judgment ultimately treated the issues raised in competing motions as requesting determination of a question of law. A court may grant partial summary judgment by writing an order "specifying the facts that appear without substantial controversy" and reserve disputed factual issues for subsequent proceedings. C.R.C.P. 56(d). The court may also resolve issues of law in ruling on a motion for summary judgment. C.R.C.P. 56(h).

### 1. De Novo Standard of Review for a Summary Judgment Order

¶ 12 Summary judgment is appropriate when the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *West Elk Ranch, LLC v. United States*, 65 P.3d 479, 481 (Colo. 2002). An appellate court reviews the grant of a motion for summary judgment de novo as a question of law. *Martini v. Smith*, 42 P.3d 629, 632 (Colo. 2002); *see also Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244, 1250 (Colo. 1996) ("All summary judgments are rulings of law in the sense that they may not rest on the resolution of disputed facts. We recognize this by our *de novo* standard of reviewing summary judgments.").

¶ 13 When determining whether summary judgment is appropriate, the non-moving

---

6. In addition to the Engineers, seven water users filed statements of opposition to Sedalia's application. Before briefing of the motions was complete, all seven water user parties had either withdrawn their statements of opposition or entered into stipulations with Sedalia, in which they agreed to not oppose entry of a proposed decree pursuant to the terms of such stipulations, including Sedalia's continued reliance on the

quantification of the historical use of the water right.

7. *See, e.g., Masters Inv. Co. v. Irrigationists Ass'n*, 702 P.2d 268, 272 (Colo. 1985) (explaining that an unreasonably lengthy period of nonuse of a water right creates a presumption of intent to abandon, which may be rebutted by evidence offered by the water right holder).

party is entitled to the benefit of all favorable inferences reasonably drawn from the undisputed facts; all doubts must be resolved against the moving party. *Bebo Constr. Co. v. Mattox & O'Brien, P.C.,* 990 P.2d 78, 83 (Colo. 1999). Where there is no disputed material fact, and the moving party is entitled to immediate judgment by virtue of clear principles of law, dismissal of the claim is proper. *ISG, LLC v. Ark. Valley Ditch Ass'n,* 120 P.3d 724, 730 (Colo. 2005).

## 2. Elements of Claim and Issue Preclusion

¶ 14 We have consistently recognized that the doctrines of claim and issue preclusion apply in water right adjudications. Indeed, the application of these doctrines is a cornerstone of stability and reliability of Colorado water rights. *See, e.g., Upper Eagle Reg'l Water Auth. v. Simpson,* 167 P.3d 729, 737 (Colo. 2007) (explaining that to hold that findings regarding the quantification of a water right are not entitled to preclusive effect would "undermine the stability and reliability of Colorado's prior appropriation regime"). The preclusion doctrines protect litigants from needless relitigation of the same issues, further judicial economy, and promote the integrity of the judicial system by affirming that one can rely upon judicial decrees because they are final. *Lobato v. Taylor,* 70 P.3d 1152, 1165–66 (Colo. 2003).

¶ 15 Claim preclusion bars relitigation of matters that have already been decided in a prior proceeding, as well as matters that could have been raised in a prior proceeding but were not. *Argus Real Estate, Inc. v. E–470 Pub. Highway Auth.,* 109 P.3d 604, 608 (Colo. 2005); *Natural Energy Res. Co. v. Upper Gunnison River Water Conservancy Dist.,* 142 P.3d 1265, 1280 n.22 (Colo. 2006). A previous judgment precludes a court from reconsidering a claim in a subsequent proceeding if: (1) the first judgment is final; (2) the subject matter is identical; (3) the claims for relief are identical; and (4) the parties are identical or there is privity between parties to the two actions. *Burlington Ditch Reservoir & Land Co. v. Metro Wastewater Reclamation Dist.,* 256 P.3d 645, 668 (Colo. 2011).

¶ 16 Issue preclusion provides that when a court enters a final decision on an issue previously litigated, the decision is conclusive in a subsequent action involving the same parties or those in privity with the original parties. *McNichols v. Elk Dance Colo., LLC,* 139 P.3d 660, 667 (Colo. 2006). Four criteria must be met for issue preclusion to apply: (1) the issue is identical to an issue actually litigated and necessarily adjudicated in the prior action; (2) the party against whom estoppel is sought was either a party to the prior action or in privity with a previous party; (3) a final judgment was entered on the merits in the prior proceeding; and (4) the party against whom estoppel is sought had a full and fair opportunity to litigate the issues in the prior proceeding. *Id.*

## B. Quantification of Beneficial Consumptive Use Based on a Representative Period of the Water Right's Exercise

¶ 17 In discussing and applying claim and issue preclusion to water cases, we have been cautious to take into account the facts of the individual case and water law's underlying policy objectives of security, reliability, and flexibility. Waters of the natural stream, including tributary groundwater, belong to the public subject to appropriation through actual beneficial use. Colo. Const. art. XVI, § 6. Colorado's water rights system is designed to provide security, assure reliability, and cultivate flexibility in the public and private use of this scarce and valuable resource. *See Empire Lodge Homeowners' Ass'n v. Moyer,* 39 P.3d 1139, 1147 (Colo. 2001). A water right is a usufructuary right. One does not "own" water; rather, one owns the right to use water within the limitations of Colorado's prior appropriation doctrine. *See* § 37–92–103(12), C.R.S. (2014) (defining a "water right" as "a right to use in accordance with its priority a certain portion of the waters of the state by reason of the appropriation of the same"); *see also Kobobel v. Colo. Dep't of Natural Res.,* 249 P.3d 1127, 1130 (Colo. 2011) (explaining that under Colorado's prior appropriation doctrine, a vested priority date has always been subject to the

rights of senior water right holders, as well as the amount of water available in the tributary system).

¶ 18 Our early case law recognized that water right owners have the right to make changes to the terms of their decrees through the adjudication process set forth by the General Assembly. *Strickler v. City of Colo. Springs*, 16 Colo. 61, 26 P. 313, 315–16 (1891) ("We grant that the water itself is the property of the public. Its use, however, is subject to appropriation, and ... the owner has the paramount right to such use. In our opinion this right may be transferred by sale so long as the rights of others, as in this case, are not injuriously affected thereby."); An Act in Relation to Irrigation, ch. 105, sec. 1, 1899 Colo. Sess. Laws 235 (providing for a petition procedure to make changes to decreed water rights).

¶ 19 Where a court has never adjudicated the historical beneficial consumptive use under the original appropriation's decree, that determination must be made in the pending change case by examining the representative period of use. *Pueblo West Metro. Dist. v. Se. Colo. Water Conservancy Dist.*, 717 P.2d 955, 959 (Colo. 1986); *see also Ready Mixed Concrete Co. v. Farmers Reservoir & Irrigation Co.*, 115 P.3d 638, 646 (Colo. 2005). As we discussed in *Farmers High Line Canal & Reservoir Co. v. City of Golden*, after development of improved engineering techniques, courts began translating a petitioner's historical consumptive use into a volumetric limitation stated in acre-feet to more accurately prevent injury to juniors in change proceedings. 975 P.2d 189, 197–98 (1999). Indeed, "many of the early Colorado decrees awarded rates of flow in excess of the amounts necessary for the petitioner's beneficial use, and some even went so far as to grant more water than a particular ditch would carry." *Id.* at 198; *see also Pueblo West*, 717 P.2d at 959 ("[O]nce an appropriator exercises his or her privilege to change a water right the appropriator runs a real risk of a requantification of the water right based on actual historical consumptive use." (internal citations omitted)).

¶ 20 A water right under Colorado's prior appropriation system arises only by lawful application of the originally decreed water to an actual beneficial use. *Empire Lodge*, 39 P.3d at 1147; *Weibert v. Rothe Bros.*, 200 Colo. 310, 618 P.2d 1367, 1371 (1980). Basic principles concerning a change of water right anchor their roots in long-standing water law, which provides that: (1) the extent of beneficial use of the original appropriation limits the amount of water that can be changed to another use, and (2) the change must not injure other water rights. *Santa Fe Trail Ranches Prop. Owners Ass'n. v. Simpson*, 990 P.2d 46, 53 (Colo. 1999). Accordingly, the right to make a change to a prior appropriation water right, such as a change in point of diversion or place or type of use, is limited in time and quantity to historical use. *Burlington Ditch*, 256 P.3d at 675.

¶ 21 Thus, the actual beneficial use of the appropriation becomes the basis, measure, and limit of the water right. *Santa Fe Trail Ranches*, 990 P.2d at 53. Over an extended period of time, the pattern of historical diversions and use matures, becoming the true measure of the water right. *Williams v. Midway Ranches Prop. Owners' Ass'n*, 938 P.2d 515, 521 (Colo. 1997). In a change proceeding, the water court has a duty to ensure that the true right–that which has ripened by beneficial use over time—is the right that continues in its changed form under the new decree. *Santa Fe Trail Ranches*, 990 P.2d at 55. The actual historical diversion for beneficial use could be less than the optimum utilization in any particular case, either because the well or other facility involved cannot physically produce at the decreed rate on a continuing basis, or because that amount has simply not been historically needed or applied for the decreed purpose. *State Eng'r v. Bradley*, 53 P.3d 1165, 1169 (Colo. 2002). Thus, an absolute decree, whether expressed in terms of a flow rate or a volumetric measurement, is not a final adjudication of actual historical use, but implicitly, is further limited to actual historical use over a representative period. *Id.* at 1170; *In re Revised Abandonment List of Water Rights in Water Div. 2*, 2012 CO 35, ¶ 8, 276 P.3d 571, 574.

¶ 22 Historical consumptive use under the adjudicated water right is calculated based upon a pattern of diversion and use over a representative period of time, expressed in acre-feet of water and is the quantitative measure of the water right. *Burlington Ditch,* 256 P.3d at 662; *Cent. Colo. Water Conservancy Dist. v. City of Greeley,* 147 P.3d 9, 14 (Colo. 2006). The amount of consumptive use water available under a change decree establishes the relative value of a prior appropriation priority's usufruct. *See Navajo Dev. Co. v. Sanderson,* 655 P.2d 1374, 1378–80 (Colo. 1982).

## C. Claim and Issue Preclusion in Water Cases

¶ 23 Our *Farmers High Line* decision is a leading case regarding application of claim and issue preclusion to water cases. Due to the "unique nature of water law, the litigation surrounding water rights decrees commonly raises complex problems of claim and issue preclusion." *Farmers High Line,* 975 P.2d at 198. As a result, a water court must tailor the traditional analytical framework employed to determine whether a previous action operates as a bar to a current claim in order to suit the specific context of water decrees. "Tension exists between the mandate requiring courts to give preclusive effect to purportedly final decrees entered in previous actions and the need to leave the courthouse door open to petitioners who allege new injury as a result of another's enlarged use." *Id.*

We addressed in *Farmers High Line* an argument seeking to reopen a prior adjudicated decree to insert volumetric limitations. We observed that the "implied volumetric limitation doctrine ... was developed in order to prevent injury to juniors when a prior change decree did not address or contemplate the question of historical consumptive use." *Id.* at 201. We held that, while claim

preclusion prevented reopening the prior decree absent a change case, claim preclusion would not bar a water court "from considering new claims of injury based on allegations of changed circumstances," such as "the appellants' allegations of enlarged use." *Id.* at 203. In reaching this conclusion, we cited *Midway Ranches,* 938 P.2d at 524–25, an augmentation plan case wherein we addressed the potential illegal enlargement of a mutual company's ditch right through the issuance of additional shares; we held that the amount of water allocated to each ditch company through a ditch-wide allocation methodology would ordinarily continue into future change cases involving the remaining shares of the ditch. *Midway Ranches* was an augmentation plan case.[8]

## D. Augmentation Plans

¶ 24 To optimize beneficial use of water while protecting the constitutional doctrine of prior appropriation, the Water Right Determination and Administration Act of 1969, §§ 37–92–101 to –602, C.R.S. (2014), provides a number of mechanisms to increase the supply of available water. Such mechanisms include changes of water rights and plans for augmentation. *See* § 37–92–302. As defined in the statute, a "plan for augmentation" is "a detailed program ... to increase the supply of water · available for beneficial use in a division or portion thereof by the development of new or alternate means or points of diversion." § 37–92–103(9). Plans for augmentation may, but need not, include a change of water right. *See City of Florence v. Bd. of Waterworks,* 793 P.2d 148, 156 (Colo. 1990). Augmentation plans allow users to divert water out of priority, from any legally available source of water, so long as the user replenishes its out-of-priority diversion using other existing water rights—ensuring the protection of senior water rights. *City of Thornton v. Bijou Irrigation Co.,* 926 P.2d 1, 88, 92 (Colo. 1996) (stating

8. In *High Plains A & M, LLC v. Southeastern Colorado Water Conservancy District,* we recognized that a sufficient ditch-wide historical consumptive use analysis in a change of water right case can be utilized in another case for allocation of the amount of water to which the mutual company shareholder is entitled. 120 P.3d 710, 723 (Colo. 2005); *see also Farmers Reservoir &* *Irrigation Co. v. Consol. Mut. Water Co.,* 33 P.3d 799, 807 (Colo. 2001) (also recognizing parcel-by-parcel methodology). Citing *Farmers High Line,* we observed that the implementation of claim and issue preclusion prevents expensive relitigation of historical consumptive use in transfer after transfer involving the same ditch or reservoir system. *High Plains,* 120 P.3d at 723.

that out-of-priority diversions can occur only when a replacement supply of water, suitable in quantity and quality, is made available to substitute for the otherwise diminished amount of water available to supply other water rights exercising their priorities).

¶ 25 Thus, augmentation plans implement the Colorado doctrines of optimum beneficial use and priority administration, favoring management of Colorado's water to extend its value for multiple beneficial purposes. *Midway Ranches*, 938 P.2d at 522. Quantification of historical beneficial consumptive use for purposes of an augmentation plan is limited, as in other change of water right proceedings, to the actual amount of water consumed under the originally decreed water right at its place of use. *See Widefield Water & Sanitation Dist. v. Witte*, 2014 CO 81, ¶ 2, 340 P.3d 1118, 1120 (holding that the historical consumptive use analysis is limited to acreage lawfully irrigated in accordance with the decreed appropriation in order to ensure that a proposed change does not result in an unlawful expansion of use); *see also Pub. Serv. Co. of Colo. v. Meadow Island Ditch Co. No. 2*, 132 P.3d 333, 344 (Colo. 2006) (limiting the proponent of an augmentation plan to historical consumptive use to prevent enlargement of the water right).

¶ 26 A water court will approve a change of a water right or augmentation plan only if the change will not injure other adjudicated water rights. § 37–92–305(3)(a). Terms and conditions to prevent injury may include relinquishment of part of the decree for which a change is sought "if necessary to prevent an enlargement upon the historical use ... to the detriment of other appropriators." § 37–92–305(4)(a)(II). The essential function of a change proceeding is to confirm that a valid appropriation bearing the original priority date continues in effect under decree provisions that differ from those contained in the prior decree. *See High Plains*, 120 P.3d at 721; *Midway Ranches*, 938 P.2d at 521 ("Absolute water rights used in one location may be quantified and changed for use....").

¶ 27 We turn now to the water court's order precluding inquiry into the 24 years of nonuse that the Engineers argue requires requantification of the water right in this change proceeding.

### E. The Water Court's Issue Preclusion Order in This Case

¶ 28 The water court's order, dated November 24, 2013, states in pertinent part as follows. First, the water court recites that the Engineers assert, as a matter of law, that the water right must be requantified and reduced to take into account 24 years of nonuse under the Owens Concrete change decree. Second, the water court rules as a matter of fact and law that issue preclusion prevents the Engineers from seeking such a requantification. Third, the water court reasons that, if a determination of current historical consumptive use must necessarily include each of the 24 years of nonuse as zero years, there would be a significant reduction in the volume of consumptive use water available to Sedalia's use of the water right. Fourth, the court concludes that acceptance of the Engineers' position would result in a de facto finding of abandonment of part of the water right without Sedalia being able to present evidence to rebut a presumption of abandonment. Fifth, the water court finds and concludes that issue preclusion prevents the Engineers from contesting the average annual amount of 13 acre-feet of beneficial consumptive use water adjudicated in the 1986 decree, unless abandonment of the water right occurred, and that amount is available to Sedalia for its change of water right and augmentation plan.

The Engineers contend that Sedalia's water right must be requantified because it has not been used since the decree for Case No. 83CW364 was entered in 1986. The Engineers assert that the non-use of the water right constitutes a change in circumstances which occurred after the decree entered, and therefore neither claim nor issue preclusion prevent the court from requiring Sedalia to requantify the average historical consumptive use. Further, the Engineers seek an order reducing Sedalia's water right proportionally to account for the period of non-use....

All four criteria necessary for application of issue preclusion exist in this case. The

historical consumptive use of Sedalia's 27.1% of the Stephens Sump No.1/Ball Ditch right was quantified in Case No. 83CW364. The Engineers were a party in that prior action and had full and fair opportunity to ligate the issue of historical consumptive use. Finally, the decree in Case No. 83CW364 is a final judgment. . . . The water court in 1986 quantified the historical consumptive use of the 27.1% interest in the Stephens Sump No. 1/Ball Ditch right, now owned by Sedalia, as 13.0 acre feet per year, to be diverted at the rate of 0.116 cfs. The Engineers concede that the historical consumptive use for the water right was quantified as of December 3, 1986, and agree they are bound by the court's findings through that date. However, the Engineers argue that a determination of the *current* historical consumptive use must necessarily include the twenty-plus years that the water right was not used. While it is not known how many years of use prior to 1986 the court considered when calculating average historical consumptive use, if the court now includes the many years of non-use *after* the decree was entered to requantify the historical consumptive use there would undoubtedly be a significant reduction of the water right decreed in Case No. 83CW364. . . .

However, in a case such as this where the historical consumptive use has been quantified as part of a final decree and that water right has not been used after the decree entered, the court finds that proper inquiry is whether that water right has been abandoned in whole or in part, rather than requiring the water right holder to requantify that right. *See* C.R.S. 37–92–301(5). To hold otherwise under the facts of this case would result in a *de facto* finding of abandonment of part of the water right without an opportunity for Sedalia to offer evidence to rebut a presumption of abandonment arising from a lengthy period of non-use. . . .

Sedalia is not required in this action to requantify its 27.1% interest in the Stephen Sump No. 1/Ball Ditch water right, which as previously quantified as 13.0 acre feet per year by the water court in Case No. 83CW364. The court finds that issue preclusion bars the Engineers from contesting the average historical consumptive use quantified in Case No. 83CW364. In addition, the court concludes that the applicable standard, based on the particular facts of this case, is abandonment and not requantification of the water right.

*Order Re: Sedalia's Motion for Summary Judgment and the State and Division Engineers' Cross Motion for Summary Judgment* (Water Division 1, State of Colorado, Nov. 24, 2013).

¶ 29 We agree with the water court that issue preclusion applies to the historical consumptive use quantification the water court adjudicated in the 1986 Owens Concrete change decree, and as parties to that case the Engineers cannot relitigate that issue here. We do not agree, however, that issue preclusion bars an inquiry into whether unjustified post-decree nonuse of the water right occurred between 1986 and Sedalia's change application following acquisition of the water right. Because prongs 1 and 4 of the issue preclusion inquiry are not met, issue preclusion does not apply. As to prong 1, the present issue of beneficial use—including the post-1986 decree nonuse—cannot be considered identical to the issue of actual historical beneficial consumptive use between 1872 and 1986 when the water court last examined the representative historical period of the water right's exercise in the Owens Concrete change case. As to prong 4, the alleged post-1986 nonuse was not and could not have been litigated in the prior case, and the party against whom estoppel is sought, the Engineers, has not had a full and fair opportunity to litigate the issue of the alleged post-1986 decree period of nonuse of the water right and the effect, if any, that an unjustified period of nonuse has on the amount of consumptive use water available for Sedalia's change of water right and augmentation plan.

### F. Application to This Case

¶ 30 Backed by multiple amici briefs in its favor, Sedalia argues a polar opposite theory from that of the Engineers in this case.

Fundamentally, the Engineers contend that the amount of historical beneficial consumptive use allocated to a water right under a change decree must be requantified each and every time another change decree is sought. To the contrary, Sedalia and amici argue that, once the historical beneficial consumptive use quantification for the original appropriation has been made, it is fixed and carries through to all future change cases, ad infinitum.

■ ¶ 31 Neither of these propositions conforms to existing statutes and case law. Resolution of the case now before us calls for no such cosmic pronouncement. Although the preclusion doctrines apply to water adjudications, their application is not without reservation.[9] The original priority date of an appropriation continues into the future under each change decree. But a changed circumstance, such as an extended period of unjustified nonuse, calls for an inquiry into whether the representative period of time used for calculating the amount of consumptive use water available under the prior decree should remain the same for subsequent change applications. We said in *Midway Ranches* that "[w]hen prior change decrees are subject to interpretation in subsequent change proceedings, the ordinary interpretation to be made in the absence of a quantification or otherwise controlling terms of a prior judgment is that historic usage ... governs the extent of usage under the change decree." 938 P.2d at 523. A "yield per share which can be removed for use in an augmentation plan is not expected to differ from augmentation case to augmentation case." *Id.* at 526. Claim preclusion serves an important role in the "stability and reliability of Colorado water rights," because it bars an objector opposing an augmentation plan from litigating historical usage claims that could have been

brought when historical usage was previously at issue and actually determined. *Id.* at 525.

¶ 32 However, central to the dispute at hand, *Midway Ranches* also cautioned about changed circumstances:

[W]e do not hold that [claim preclusion] should bar the water court *from addressing circumstances which have changed subsequent to the previous determination,* nor does this doctrine preclude the water court from determining historic use in a change, augmentation, or expanded use injury case when such historic use has not been determined in a previous proceeding.

*Id.* (emphasis added).

■ ¶ 33 Every water right decree contains the implied condition of beneficial use. *Weibert,* 618 P.2d at 1371. Prolonged unjustified nonuse of a water right between entry of a prior change decree and application for a successive change decree may constitute a changed circumstance. The change process facilitates transfers of water rights and allows continued application of the appropriated water to specified beneficial uses at identified locations, which may be different from those of the current decree, and under conditions necessary to prevent injury to other water rights. *High Plains,* 120 P.3d at 721. A change proceeding confirms that a valid appropriation will continue in effect under provisions that differ from those contained in the prior decree. *Id.* at 719.

■ ¶ 34 Prolonged unjustified nonuse calls into question the appropriate representative period of time for calculating the annual average consumptive use amount and therefore, the amount legally available for the subsequent change decree. The water court erred by invoking issue preclusion against inquiry into the alleged nonuse of the water right after entry of the 1986 change decree and by allowing only an abandonment claim.[10] We reach this conclusion because

9. For example, in *Widefield Water* we held that issue preclusion did not apply to a decree declaring that it "shall not be of any force or effect unless and until specific conditions were satisfied" because such conditions were never met, and therefore the decree was formally vacated. 2014 CO 81, ¶ 12, 340 P.3d 1118, 1123. The subsequent decree's purpose was simply to vacate the prior decree; any reference to lands

historically irrigated did not foreclose the water court from addressing the issue of historical consumptive use. *Id.* at ¶ 14, 340 P.3d at 1123.

10. Abandonment presents a different issue: whether the owner of the water right intended to abandon that right. *See, e.g.,* § 37–92–402(11) (a period of ten years of nonuse creates a rebuttable presumption of abandonment for purposes of

the record contains no factual findings or rulings on the issue of whether Owens Concrete's alleged nonuse of the water right was justified.[11] On its face, its change decree required that the 8.1 acres of irrigated land be dried up and the 13 acre-feet of annual consumptive use water be left in the stream to replace out-of-priority depletions up to that amount. The concrete company abided by the limiting conditions of its change decree, but it never made the depletions authorized under the decree and thus never needed to claim augmentation credit. Apparently the reason it did not—and in fact could not—claim credit for the augmentation water left in the stream was due to Owens Concrete's decision to not install a pump after discovering the well would not yield sufficient groundwater supply. Moreover, call conditions on the stream during the alleged period of nonuse may not have been such as to actually require the augmentation water to protect against injury to other water rights. As amici point out in their briefs, augmentation plans are often fashioned, or operate by default, to supply more augmentation water to the stream than proves to be necessary. Supplying excess augmentation water to the stream under a decree certainly benefits other water users in order of their priorities, but there is no entitlement to continuation of such a gratuity.

¶ 35 It is not our role to make the findings of fact regarding any of the above or other circumstances that the parties may present to the water court on remand. We leave such findings and considerations to the water court. The water court must determine whether or not it is appropriate under the facts of this case to choose a revised representative period for the calculation of the amount of historical consumptive use water available for Sedalia's change of water right and augmentation plan.

¶ 36 The water court might also consider as relevant the General Assembly's choice to excuse some or many years of water right nonuse, in order to promote other objectives of the water law. We have recognized that "[t]he methodology for calculating historic[al] consumptive use of the water rights over a representative period of time for a permanent change will not count or discount the years of [statutorily] authorized temporary use." *ISG, LLC*, 120 P.3d at 734 (holding that any authorized temporary changes to type or place of use made by petitioner would not reduce its historical consumptive use allocation as measured by the operation of the decreed water rights).

¶ 37 Other examples where nonuse of a water right by its owner does not count as a zero use year are section 37–92–305(4)(a)(IV), applicable to crop rotation following plans, as well as sections 37–92–102(3) and 37–83–105(2)(c), applicable to a loan of a water right to the Colorado Water Conservation Board for instream flow purposes. Most recently, in 2013, the General Assembly excluded both decreased use and nonuse under water conservation programs. § 37–92–305(3)(c)(II) ("In determining the amount of historical consumptive use for a water right in division 4, 5, or 6, the water judge shall not consider any decrease in use resulting from ... [t]he nonuse or decrease in use of the water from the water right by its owner for a maximum of five years in any consecutive ten-year period" as a result of participation in certain water conservation, land fallowing, and water banking programs).

¶ 38 In addition, our case law excuses periods of nonuse due to conditions such as storms or washouts beyond a water user's control. *Flasche v. Westcolo Co.*, 112 Colo. 387, 392–93, 149 P.2d 817, 820 (1944); *In re Revised Abandonment List of Water Rights*

creating the division engineer's abandonment list).

11. A water court's factual conclusions cannot be disturbed on appeal if they are supported by the record. However, because the water court made no findings or ruling with regard to the Engineers' claim, it is proper to remand to the water court for a determination of the validity of the claim that the 24 years of nonuse affects the

historical consumptive use quantification of the Stephen Sump No. 1/Ball Ditch water right. *See Farmers High Line*, 975 P.2d at 203–04; *see also Bradley*, 53 P.3d at 1170 ("The applicant therefore bears the risk of nonpersuasion with regard to historic use as well as the absence of injury to other rights. Both are primarily matters for the trier of fact, but if the record fails to contain evidence from which both can be favorably resolved, the application must be denied.").

*in Water Div. 2*, 2012 CO 35, ¶ 9, 276 P.3d 571, 574 ("Rather than creating an exception to the requirement to prove historic[al] use as the measure of any water right susceptible of being changed, *Flasche* merely spoke to the representative period over which a showing of historic[al] beneficial use could be sufficient.").

¶ 39 This discussion simply points out the following: the water law does not rigidly require that every year a water owner does not use a water right must be counted as a nonuse year. Instead, under appropriate circumstances, the water court has discretion to select a representative period of time of the water right's exercise in calculating the amount of consumptive use water available for inclusion to the changed water right.

### Conclusion

¶ 40 We affirm the water court's determination that issue preclusion applies in this case to bar the Engineers from contesting the amount of historical beneficial consumptive use allocated to the water right for the 1872 to 1986 period. We reverse the water court's ruling applying issue preclusion to the post-decree period following entry of the Owens Concrete 1986 decree. On remand from this decision in finalizing its decree, the water court should take any evidence and legal argument offered by the parties on the issue of Owens Concrete's alleged period of post–1986 nonuse. If the water court finds there has been prolonged unjustified nonuse of the water right between entry of the prior change decree and the pending decree application, it may conclude that this constitutes a changed circumstance calling for the selection of a revised representative period of time for calculating the annual average consumptive use amount available for Sedalia's change of water right and augmentation decree.

### III.

¶ 41 Accordingly, we affirm the water court's judgment in part and reverse it in part. We return this case to the water court for further proceedings consistent with this opinion.